## HEARD *v.* DOOLY COUNTY.

1. Where a contractor undertakes the construction of a public building, and stipulates with the persons acting on behalf of the public for the completion of his contract within a stated time, agreeing to pay a given sum by way of rent for each week during the time which should elapse between such stated time and the time when the building is actually completed and delivered, if the sum so stated be not disproportionate to the inconvenience which would be occasioned by such delay, and which must have been within the contemplation of the parties at the time the contract was executed, and the sum thus reserved to be paid be not

otherwise unreasonable or unjust, such sum so agreed upon will be regarded as liquidated damages, and is recoverable as such.

2. Where the agreement is for the construction of a building for a lump sum named in the contract, which further provides: "No new work of any description done on the premises, or any work of any kind whatsoever, shall be considered as extra, unless a separate estimate in writing for the same, before its commencement, shall have been submitted by the contractor to the architect and the ordinary, and their signatures obtained thereto," no claim for extra work alleged to have been performed by the contractor can be sustained, unless it appears that it was done after compliance with the conditions thus expressed.

Argued June 2, — Decided July 8, 1897.

Complaint.    Before Judge Fish.    Dooly superior court. September term, 1896.

In May, 1890, Heard entered into a contract with the ordinary of Dooly county to build a court-house for the county for $25,000, the building to be completed March 1, 1891. He was paid all of that amount except $557.71, which was retained because of delay in the completion of the building, it being claimed on the part of the county that the deduction was authorized by the contract. For the amount so deducted, and for $68.50 alleged to be due for extra work on the building, Heard sued the county. There was a verdict in favor of the defendant. The plaintiff made a motion for a new trial, on the grounds that the verdict was contrary to law, evidence, etc. The motion was overruled, and he excepted.

The contract stipulated, that "said contractor [Heard] shall well and substantially and in the most workmanlike manner, with the best materials of their respective kinds, and under the direction and inspection of the architect, make, execute, finish and complete and deliver over to the said ordinary, on or before the first day of March next, the several works, acts, matters and things mentioned or referred to in the specifications, plans and drawings for a new court-house at Vienna, already prepared by W. H. Parkins, architect, which are hereby made a part of this contract, with such additions to, alterations of, and omissions from the said plan or works (if any) as the architect or ordinary may from time to time during the process of the work direct; but further time shall be allowed, if, with reasonable diligence on the part of the con-

tractor, such additions, alterations and omissions should be cause of delay in the execution and completion of the works which said specifications and the drawings are intended to co-operate, so that any work exhibited in the drawings and not mentioned in the specifications, and vice versa, are to be executed the same as if it were mentioned in the specifications and set forth in the drawings, to the true meaning and intention of the said drawings and specifications, without any extra charge whatever. . . The contractor shall be answerable for, make good all injuries, damages, re-erections and repairs occasioned or rendered necessary by defective material or bad workmanship, fire and trespass; but shall not be answerable for such injuries, damages, repairs, fire and trespass, or delays occasioned or rendered necessary by other contractors (if any) employed on the same building or works previously to the completion and delivery of the same. . . The ordinary shall pay to the contractor for the full, safe and perfect completion of this contract the sum of twenty-five thousand dollars ($25,000), but if the architect, with the consent of the ordinary, shall direct any additions to, alterations of, or omissions from the plans or works, the value of such to be added to or deducted from the said sum of twenty-five thousand dollars, as the case may be. (5) The sum payable under the last clause shall be paid by instalments in the following manner, viz. (provided that in each case of the said payments a certificate shall be obtained from and signed by the said architect, that he considers the payment properly due): Certificates for the payments will be issued by the architect not oftener than once a month, for the work done and material delivered up to the time of issuing said certificate, with ten per cent. deduction from each certificate until the completion of the job. When the job is completed and the contract faithfully carried out, the architect will issue to the contractor the final certificate which, with the percentages held back, will be the final payment in full of this contract. . . In case the said works and things hereby contracted to be done by the contractor shall not be done and completed by the time hereinbefore mentioned, the con-

tractor shall pay, on demand, to the ordinary, as rent, the sum of thirty-two dollars for every week that may elapse from the appointed and actual time of completion and delivery hereinbefore mentioned, allowance being made for delay (if any) occasioned in the execution and completion of the work by reason of additions, alterations and omissions as provided for in clause first, or by other contractor on same building. . . If at any time during the progress of the work the ordinary fails to make good the payment of instalments when they become due, the contractor, as per clause 5th, shall notify the ordinary and architect, in writing and left at their place of abode (if not delivered in person), that if after five days the instalment of money due the contractor is not paid by ordinary, the contractor may cause any and all the work herein contracted for to cease operating, and the ordinary shall pay on demand to the contractor the usual bank interest on the payment of said instalment, and work to be resumed as soon as said instalment is paid. . . No new work of any description done on the premises, or any work of any kind whatsoever, shall be considered as extra, unless a separate estimate in writing for the same, before its commencement, shall have been submitted by the contractor to the architect and the ordinary, and their signatures obtained thereto. In case of day work, statement of the same must be delivered to the owner at latest during the week following that in which the work may have been done, and only such day work shall be paid for, as such, as agreed on and authorized in writing. . ﹏ Should any dispute arise respecting the true meaning of the drawings or specifications, the same shall be decided by the architect, and his decision shall be final and conclusive."

The plaintiff testified, that the work on the building was retarded by bad weather, and by delays in payments of instalments of money due under the contract as the work progressed. In the fall of the year there was a protracted spell of bad weather which lasted from two to four months. After the Christmas holidays, in the first part of 1891, the rain was especially heavy. The weather was unprecedentedly wet. It

rained almost incessantly for two months; and there were also the usual periodical rains all along. The rain prevented the laying of bricks for about three months. During a great part of that time it was impossible for the work to have gone on and to have been performed in a workmanlike manner. For a part of the time he could not get any brick. The brick-yard where he obtained the bulk of his brick was entirely overflowed, and another brick-yard could not supply any brick for several months. All the bricks that were on the ground in the yard were destroyed. The Georgia Southern railroad was overflowed, and they could not get a train over it in eleven days. The overflow lasted possibly about two weeks, but the results of the overflow were felt for about two months. He could not say whether the work could have been completed according to the contract by the first of March or not. He did not think it could. He could not do it. He had a sufficient number of laborers. He had to suspend work on account of money due him not being paid. He was required to get a certificate from the architect before he could draw any money, and the certificates were not furnished him monthly. This caused dissatisfaction on the part of the people doing the work. He got the money once in three months and once in four months. The architect lived in another county, quite a distance from where the work was being done, and never came at the appointed time, and plaintiff had to wait indefinitely. He repeatedly wrote to the architect to get him to come and give estimate, and so did the ordinary. It was the fault of the architect or the county authorities that these estimates were not furnished at the end of the month. Witness, being hard pressed for money, repeatedly made application to the ordinary and to the treasurer of the county. On one occasion he went to the ordinary and told him he (plaintiff) would have to suspend work; and the ordinary gave him an order on the treasurer "to bridge over" until the architect should come; but the treasurer would not pay it unless he had a certificate for it from the architect. The extra work for which he charged was extra work which the architect instructed him to do, and certain portions of it were necessary. None of it is in-

cluded in the drawings of the architect. The main work was completed in accordance with the contract and the plans and specifications. The charges for extra work are reasonable. So far as plaintiff knew, the ordinary did not know before the extra work was done that the architect had required him to do it, nor that the work was to be done. The ordinary had nothing to do with the building. He never instructed the witness as to anything about the building, except through the architect. Plaintiff does not remember when the ordinary received notice that there was extra work for which plaintiff claimed pay; but he thinks it was after the settlement. After the courthouse was accepted, plaintiff told the ordinary that he was going to sue for compensation for extra work, if it was not paid to him. Other witnesses testified as to the interruption of the work by the rains.

The defendant introduced testimony, that during the time the court-house was being built, the weather, although bad for a part of the time, was not unusual; and that the work was not carried on as rapidly as it might have been. There was not a full set of hands on the building at any time. The architect visited the building every six or eight weeks, remaining from eight to twenty-four hours each time, and was present each time when his certificate was given to the plaintiff. Payments were made to the plaintiff each month during a period beginning in June, 1890, and ending in August, 1891, except in July and September, 1890, and June, 1891. He got money every time he asked for it until along towards the last payments. One reason why payments were not made to the plaintiff oftener was, that the material on the ground and the progress of the work would not guarantee it. The $557.71 was held back as a forfeit for non-compliance with the contract, being $32 per week for the delay after March 1, until July 1, 1891, 17 weeks. The basis of the settlement was a written report of the architect dated July 31, 1891, as follows: "I find that the building has been (with a few exceptions) well and substantially built, agreeable to the plans and specifications. The seats have not yet been put in, but the contractor expects their arrival every day. The roof needs such

attention as will render it perfectly free from leaks; some few glass need to be put in where some are now broken, together with a few other matters that the contractor is now giving attention to. I would therefore recommend acceptance of the building as soon as the seats are in, and such other matters attended to as above specified and as approved by the architect, reserving such amounts as herein below mentioned from the total amount due, as follows: amount of contract $25,000; amount paid, total, $20,974.80; leaving balance due exclusive of forfeit, $4,025.20. According to the contract the building was to have been completed on March 1, being 17 weeks and 3 days up to date, under a forfeit of $32 per week, which amount totals up $557.71. I would recommend that the sum of $600 be reserved from the amount due until the final completion and acceptance of the bill. To recapitulate:

Total amount unpaid on contract, including un-

| | | |
|---|---|---|
| paid percentages . . . . . . . . . . | | $4,025.20 |
| Amount of forfeit . . . . . . . . $557.71 | | |
| Amount reserved . . . . . . . 600.00 | | 1,157.71 |
| | | $2,867.49 |

I therefore recommend that the above statement be acted upon in the final settlement of a contract of the new court-house between yourselves and J. P. Heard as contractor."

There was evidence that all extra work for which the county was to pay was paid for. The ordinary testified that the extra services were never brought before him in writing or otherwise. The plaintiff mentioned it to him about the time of the final settlement. At the time of the settlement the claim of the plaintiff for extra work was brought up by the architect. The architect said that the contract was not fully complied with, and that he would not allow all of the extra work; that the work which did not come up exactly to the contract would overbalance the other. The architect was not authorized to have any changes made from the plans.

*J. H. Martin, U. V. Whipple, D. L. Henderson,* and *Busbee, Crum & Busbee,* for plaintiff.

*A. C. Pate,* for defendant.

LITTLE, J. The plaintiff in error brought suit against the county of Dooly, to recover a balance alleged to be due for the construction of a court-house for that county, and for the value of extra work done on same. The defendant pleaded that it was not indebted to the plaintiff in any amount.

The work was undertaken and carried on under a written contract, and by its terms the rights of the parties are to be determined. The contract bears date November 8, 1890, and stipulates that the plaintiff will furnish material and erect the building in the manner set out in the contract and according to certain specifications, and deliver the same to the ordinary of the county on the *first day of May* thereafter, for which he shall be paid, as the work progresses, the sum of twenty-five thousand dollars. It was further stipulated, that the contractor should pay to the ordinary of the county as *rent* the sum of thirty-two dollars for every week that may elapse, in case the work contracted for shall not be done and completed by the time before mentioned. The suit was instituted to recover $557.71 for balance due plaintiff under the contract, and $68.50 extra work on the building. The defendant pleaded that it was not indebted. There was a verdict for the defendant. The defendant had a settlement with the plaintiff on July 1, 1891, and deducted from payments due under the contract the sum of $557.71, being thirty-two dollars per week. The first question presented for our consideration is, does a proper construction of the contract fix the sum of thirty-two dollars per week as liquidated damages, or is the sum which is stipulated in the contract in the nature of the penalty?

As a rule, the measure of recovery for the breach of a contract is the amount of damage sustained; and if the parties agree what the damage shall be in case of a breach, a recovery can be had in a proper case for the stipulated amount. Civil Code, § 3794. Unless, however, this amount which is stipulated is reasonable in view of the subject-matter, and was intended by the parties as a compensation to the injured one, it will be treated as a *penalty* for the breach; and as the law does not favor penalties or forfeitures, actual damages will only be given to the injured party, regardless of the amount named

in the contract.  Civil Code, § 3795.  In other words, for the breach of a contract the law will measure and award damages to the injured party, the object being to compensate the one sustaining the damage.  If on entering into a contract the parties themselves, from calculation or with a view of simply compensating the one injured by the unauthorized act of the other, agree on a sum which is not excessive, as the damages to either in the case of a breach, such is then the measure of damages, because it has been settled between them.  So, by contract parties may limit to a less amount than the actual damage what sum shall be paid over to the other in case of a breach.  But if they agree on a sum to be paid in case one of them violate the terms agreed on, — in the nature of a forfeiture for such violation, irrespective of the damages sustained, and grossly excessive, — it can not be recovered; the courts will award only such a sum as will cure the hurt, notwithstanding such agreement.  Indeed our code lays down a rule for recovery in all cases, when the damages have been agreed on by the contract: "where such damage is capable of computation and is not uncertain in its character," the stipulations made will be declared to be penalties and not recoverable.

It becomes important to ascertain the intention of the parties; whether the amount was ascertained and fixed to satisfy the injury which one would sustain if the other violated his contract, or whether it was a penalty he had to pay in case of violation so as to hold him to his bargain.  It does not depend on what the parties designate it to be in the contract.  It may be called liquidated damages, or penalty, or other terms be used.  The intention of the parties from the whole instrument is to be gathered and thereby construed.  In 7 C. B. 717–728, "under a penalty of 500 pounds," was held to fix 500 pounds as liquidated damages; and in Kemble v. Farrer, 6 Bingham, 141, it was held that when the contract used the words "liquidated damages," they were not decisive against holding the sum to be a penalty.  See also Sanders & Ables v. Carter, 91 Ga. 453.

Again, the subject-matter and nature of the contract are important elements in determining whether the stipulation shall

be treated as liquidated damages or held to be a penalty. Where it was agreed "that either party failing to perform their part forfeits to the other $1,000," and the breach alleged was a failure to take and pay for two lots of turpentine, it was held that the damages were easily ascertained, and it was a penalty. *Lee* v. *Overstreet*, 44 *Ga.* 507. Contra, if the damages must necessarily be wholly uncertain and incapable of estimation, the party failing to perform will be held to pay the amount as liquidated damages. *Sanders & Ables* v. *Carter*, 91 *Ga.* 450, and authorities cited under first headnote.

The subject-matter in the present case was the erection of a court-house building to contain a place for holding the court, offices for the transaction of the public business of the county, places of safety for the records; — such are convenient for the dispatch and orderly transaction of the business of the county, but necessary, and expensive to be supplied by substitute. Such being the subject-matter of the contract, the parties entered into an agreement, the one stipulating with the other to do this public work in a given time — estimated to be ample in which to accomplish it; agreeing, if he did not do so, to pay as *rent* thirty-two dollars for every week. Why thirty-two dollars? These figures to some extent indicate that they were the result of some kind of a calculation or compromise. But for the non-completion of the house which the county was ready to occupy by its officers, by which its business would be more safely carried on, its records more securely kept, the contractor agreed to pay as rent a given sum for each week beyond a time which he deemed ample for its construction. It seems to us that the parties to this agreement intended to fix the amount of damage to the county. It would be difficult to compute by ordinary rules the damage sustained, because proper accommodation could not be had in any other place than this house. Such damages, being for a deprivation, might be capable of estimation; but necessarily to a very great extent they would be uncertain, and being so, on the line of the authorities, the sum named should be held to be stipulated damages, rather than a penalty, and as such, recoverable.

The question raised in the pleadings, that the delay was occasioned by providential cause for which the plaintiff was not liable, was settled against him by the jury on ample evidence to establish their finding.

2. The plaintiff in error was not entitled to recover for the item of extra work as set out in his petition. Evidently the county by its contracting officer endeavored to guard against charges for extra work, and in this contract it was declared : "No new work of any description done on the premises shall be considered as extra, unless a separate estimate in writing for the same *before its commencement* shall have been submitted by the contractor to the architect and *ordinary* and their signatures obtained thereto." This is strong language, and is binding on the plaintiff. Confessedly his extra work was not approved by the ordinary, who represented the other party to the contract. In no other way was such work to be classed as extra work, and his claim for it must fall.

*Judgment affirmed. All the Justices concurring, except Fish, J., disqualified.*