## PARKER *v.* BROWN HOUSE COMPANY.

1. A stipulation in the lease of a building, "that the expense of keeping said building in repair during the continuance of this lease is to be borne equally between said parties, but before any repairs are made the nature and cost of same are to be submitted by each party to the other and mutually approved by them," may, so far as it requires the nature and cost of the repairs to be submitted and mutually approved, be waived by the tenant; and such waiver will result from his continuously, during the existence of the lease, requesting repairs to be made, allowing the landlord to have them made without submitting the nature and cost of the same, standing by and seeing them made without raising any objection to the landlord s failure to comply with the stipulation in the lease, and accepting the benefit of the repairs after they are so made.

2. No sufficient reason has been shown for reversing the judgment complained of.

Argued May 5,—Decided June 3, 1903.

Complaint.    Before Judge Nottingham.    City court of Macon. January 24, 1902.

*Guerry & Hall* and *W. B. Birch,* for plaintiff in error.
*Hardeman, Davis, Turner & Jones,* contra.

COBB, J.    The Brown House Company brought suit against Parker for $7.24.60.    It was alleged in the petition, that the plaintiff had leased its hotel to Allen; that, with the consent of Allen and the plaintiff, Parker had been substituted as lessee; that during the existence of the lease the plaintiff had made repairs on the building, amounting to $1,001.28; that on the expiration of the lease Parker had failed to redeliver to the plaintiff articles of personal property which under the lease were to have been returned, amounting to $224.60; and that the lease contained the following stipulation: "It is agreed between said parties, that after the said company shall place on said building the improvements mentioned in the 4th article of this agreement, that the expense of keeping said building in repair during the continuance of this lease is to be borne equally between said parties.    But before any repairs are made, the nature and cost of same are to be submitted by each party to the other and mutually approved by them."    It was also alleged in the original petition that the repairs were made "at the especial request of said Parker, and no improvements were made until petitioner was notified by said Parker that the same were necessary, and made with his full concurrence and approval."    By amendment the paragraph of the petition from which the above quotation was made was so amplified as to allege as follows:    The repairs were made at the express request of Parker, who received them without objection, and without requiring plaintiff to submit to him the nature and cost of the repairs, and without requiring an express approval by him, but he accepted the repairs and became liable to pay plaintiff at their reasonable value.    Plaintiff further says that the request by Parker for the repairs and the acceptance of the same was a departure from the terms of the contract requiring notice and approval, acquiesced in by both parties, whereby the notice and approval were waived by Parker.    The bill of particulars attached to the petition contained items of repairs, beginning with an item on November 26, 1895, and continuing with numerous items at different times, ranging in amount from less than one dol-

lar to more than one hundred dollars, the last item being on May 24, 1900, just a few months before the lease expired. The answer of the defendant denied all the material allegations of the petition in relation to his liability for the repairs, and especially denied that they were made at the request of the defendant, or that he consented to the making of the same in such a manner as to render him liable under the contract to pay for any part of them. The case was tried before the judge without the intervention of a jury, and a judgment was rendered in favor of the plaintiff for $250.32, it being stated in the judgment that this sum was "just one fourth of the amount of the general account for general repairs, and just one half of what plaintiff alleged to be due it by defendant on said account." There was a further finding of $21.90 interest. The case is here upon a bill of exceptions sued out by Parker.

The bill of exceptions assigns error upon the allowance of the amendment above referred to. There was no error in allowing the amendment. It was simply an amplification of a paragraph in the original petition. The stipulation in the contract in reference to repairs was binding upon both parties, and in the absence of any change or modification of the contract the plaintiff would have no right to call upon the defendant for one half the cost of any repairs which it had made upon the building when the nature and cost of such repairs were not mutually approved by the parties after the same had been submitted to the defendant. The parties had a right to make this stipulation, and as long as it stood each was governed by it. See, in this connection, *Heard* v. *Dooly County*, 101 *Ga.* 619; 6 Cyc. 77, and cases cited in note 88; Lloyd, Bldg. (2d ed.) § 48. There being no law of this State requiring such a stipulation to be in writing, it was within the power of the parties to alter or modify it by parol, and hence it might be waived by either party either expressly or by conduct having this effect. The controlling question in the present case is whether the judge was authorized to find that there had been such a waiver on the part of the defendant of his right to demand that the cost and nature of the repairs be submitted to him before he should be charged with any part thereof, the plaintiff being entitled to charge the defendant with one half the cost of repairs made after compliance with the provisions of the stipulation in question. The evidence for the plaintiff authorized a finding that from time to time during the con-

tinuance of the lease, as repairs of more or less importance were required, the plaintiff was notified, either by the defendant or his agents in charge of the hotel, that repairs were needed, and that there was in each instance a request that they be made.    These repairs, amounting to more than $1,000 in the aggregate, were those from a trifling character to those of a very important character,— from the repair of a sash cord at an expense of seventy-five cents to the blowing out of gas pipes at a cost of more than $100.    There was not simply a notice that repairs were required, but, according to the evidence, a direct request in each case that they be made immediately, and the judge was authorized to find that they were made as a result of these requests, that the defendant stood by while they were being made, and raised no objection to the failure of the landlord to comply with the written stipulation; and that the defendant accepted the repairs after they were made and enjoyed the benefit of them.    While the evidence did not authorize a finding that there had been any express agreement to alter the terms of the stipulation, under the circumstances above referred to the judge was authorized to find that the defendant had, by his conduct, waived the right to demand that the nature and cost of the repairs be submitted to him for approval before he should be called upon to pay his part of the expense thereof.    Requesting the repairs to be made, standing by without objection while they were being made, and accepting and enjoying the benefit of them after they were made estop him, when sued for his part of the expense, from pleading the failure of the landlord to comply with the stipulation. See, in this connection, Lloyd, Bld. (2d ed.) § 51.    In Escott *v.* White, 10 Bush (Ky.), 170, suit was brought for extra work by a contractor against one who had employed him to construct a building.    The contract stipulated that no work should be considered extra unless ordered in writing and indorsed by the architect; but it was held that if extra work was done at the instance of the owner, from which benefit was derived, it was to be regarded as an independent contract for which a recovery could be had.    In the opinion Judge Pryor said: "This stipulation in the writing could have been waived or abandoned by parol; and when extra work has been done in a case like this, at the special instance of the owner or his architect, and from which a benefit is derived, the party at whose instance and for whose protection the clause was evidently

inserted should not be allowed to say 'that although I ordered the work, and am now enjoying the benefits resulting from it, still I am not responsible, because there was no authority in writing directing its execution.'" In Baum *v.* Covert, 62 Miss. 113, there was a written contract for the erection of a building, which detailed minutely the specifications of the work to be done, and stipulated that no extra work of any kind was to be allowed or paid for unless authorized by an agreement in writing previously made. It was held that if the owner ordered the contractor to do extra work outside of and additional to that covered by the contract, and this work was done, the owner must pay what it was reasonably worth, if no price was agreed on. In the opinion Chalmers, J., said: " Notwithstanding a previous agreement that there should be no extras or outside work, save upon an express agreement in writing previously made, it was entirely competent for the parties in interest to contract verbally for whatever they mutually thereafter desired. Both parties being *sui juris*, they could nullify their previous agreement at pleasure. This they did whenever the one party ordered, and the other agreed to do whatever extra work they should mutually agree upon. They were the parties solely interested, and had the same right to undo verbally that which they had previously put in writing as they originally had to make such writing. ' *Consensus facit jus*;' and if it be true, as the jury has found, that the one party ordered the additions which the other made, the owners of the building must pay for them, notwithstanding the written stipulations to the contrary. Such stipulations, though written, may be altered or rescinded by parol, and it may be inferred sometimes that this has been done from the acts of the parties. Rhodes *v.* Thomas, 2 Carter, Ind. 638; Smith *v.* Sugerty, 4 Barb. 614." See also Truckee Lodge *v.* Wood, 14 Nev. 293; Foster *v.* McKeown (Ill.), 61 N. E. 514. The judge was authorized to find from the evidence that the course of dealing between the parties was such that there had been a waiver, on the part of the defendant, of the stipulation of the contract above referred to. See, in this connection, *Mercier* v. *Copelan*, 73 *Ga.* 636; *Grant* v. *Insurance Company*, 76 *Ga.* 575; *First National Bank* v. *Cody*, 93 *Ga.* 128 (4). It is said, though, that the plaintiff ought not to be allowed to recover for these repairs, for the reason that no demand for payment was made until after the lease had terminated, and after all the rent had been paid, and after the plaintiff had given to the defendant a check for

a small amount for repairs which he had made. While all this is true, there is nothing in the evidence which would have authorized the judge to find that there was any waiver on the part of the plaintiff of its claim for repairs. Nothing was said or done at the time of the acceptance of the rent, or at the time of the payment of the amount for repairs made by the defendant, which could be construed as a waiver in any way of any claim that the plaintiff had against the defendant, unless the mere silence on its part at the time of these transactions constituted such a waiver. While it may be usual, when a tenant offers to pay his landlord rent, for the latter to call the attention of the former to a claim against him for repairs, he is under no legal obligation to do this, and certainly mere silence will not operate as a waiver of the right to enforce the claim. While the plaintiff could have refused to pay the small amount due the defendant for repairs he had made and notified him that it would set off the amount against the sum due by him for repairs, it was not legally bound to give the matter this direction. It appears from the defendant's answer that a large amount of repairs was placed upon the building by him; in fact, according to the evidence for the defendant, the expense of these repairs was greater than the claim of the plaintiff for repairs. It was not claimed that these repairs were made at the request of the plaintiff, nor did the defendant claim any compensation for them. These facts were alluded to simply to illustrate the question as to whether there had been a waiver by the defendant of the terms of the contract, the defendant claiming that when he made repairs not in strict accordance with the contract he did not ask compensation, and that therefore the plaintiff should not be allowed to receive compensation for repairs unless they were made in strict compliance with the contract. The difference between the two is simply that in the one case there was a waiver and in the other nothing had been done which would constitute a waiver. The judge in his finding did not allow anything for the articles which it was claimed were not returned by the defendant at the expiration of the lease, and he allowed only one half of the claim for repairs. The evidence authorized, though it by no means required, a much larger finding Of course, the defendant can not complain that the judgment is for a less sum than the evidence authorized. We see no error requiring a reversal of the judgment.

*Judgment affirmed.    By five Justices.*