**318**

**EXCAVATORS AND ERECTORS, INC.,**
Plaintiff-Appellee,

v.

**BULLARD ENGINEERS, INC.,** Defendant-Third Party Plaintiff-Appellant,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Defendant-Appellant,

v.

**COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK,**
Third Party Defendant.

No. 72-3255.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1973.

G. M. Harrison, Jr., Dothan, Ala., for Bullard & U. S. Fid. & Guar. Co.

Floyd M. Buford, Macon, Ga., for appellant.

John B. Harris, Jr., Joseph H. Davis, Macon, Ga., for Excavators & Erectors & Commercial Union Ins. Co.

Before BELL, INGRAHAM and RO-NEY, Circuit Judges.

INGRAHAM, Circuit Judge:

This is a Georgia diversity case concerning a dispute between a general contractor, Bullard Engineers, Inc., and a subcontractor, Excavators and Erectors, Inc. On March 16, 1969, Bullard contracted with the Georgia Educational Authority for the construction of the Student Services Building, Middle Georgia College, Macon, Georgia. Bullard subsequently entered into a written subcontract with Excavators and work was begun under this contract in late April of 1969. During the early stages of the excavation work, Excavators discovered a subsurface condition consisting of soil unsuitable for compaction. The existence of this problem was unknown when both Bullard's general construction contract and Excavators' subcontract were consummated. Bullard subsequently was authorized by the Georgia Educational Authority to remove this soil and to replace it with suitable, compactible soil. Bullard verbally informed Excavators' supervisor, James H. Taylor, of this authorization, requested that the soil be replaced and discussed with him the procedures by which records would be kept of costs in order to compensate Excavators for this additional work. It is uncontested that Excavators completed this additional task.

While work proceeded during the summer of 1969, dissension arose between Excavators and Bullard. Bullard believed that Excavators was in default on the subcontract because of its failure to furnish adequate labor and machinery; consequently work was unjustifiably behind schedule. Early in November, this dissension resulted in Bullard's demand that Excavators leave the construction site. Excavators left the site under protest.

Excavators brought this suit, alleging that Bullard had breached its contract by ordering Excavators' men and machinery off the premises. Bullard denied liability, asserted a counterclaim for breach of the subcontract, and obtained leave to join Commercial Union Insurance Company of New York, surety on the bond posted by Excavators, as third party defendant. Excavators likewise obtained leave to add United States Fidelity and Guaranty Company, the surety on Bullard's bond, as a defendant. The case was tried to a jury, and in answer to special interrogatories the jury rendered a verdict for Excavators in the amount of $45,237.70 in addition to attorney's fees. Judgment was entered on the verdict against Bullard and United States Fidelity and Guaranty Company for $49,737.70. We affirm.

On appeal defendants Bullard and United States Fidelity and Guaranty Company raise several points of error, two of which are worthy of mention. First, defendants contend that the trial court erred in holding that the extra work of removing and replacing the unsuitable soil was done pursuant to a separate oral contract. Because the district court held that this was a separate oral agreement, evidence that Bullard had not been paid for this work was excluded as irrelevant and immaterial to the contractual relationship between Bullard and Excavators. Defendants urge, as they did in the district court, that the agreement to replace the unsuitable soil was made pursuant to the provisions of the subcontract. As the subcontract contained the provision that "the Subcontractor shall be paid within 5 days after the Contractor receive[s] payments," defendants contend that because they have not been paid, plaintiff is not entitled to payment. Defendants also argue that since the subcontract incorporated by reference the provisions of the general contract, the agreement to replace the soil was merely a change in the subcontract pursuant to the change clause of the general contract rather than a separate oral agreement.

Our review of the record reveals ample evidence to support the district court's conclusion that the agreement to replace the unsuitable soil was a separate oral contract apart from the writ-

ten contract between the parties. Evidence introduced at trial established that when the unforeseen soil condition was encountered, Bullard obtained authorization to pay for additional work and requested that Excavators replace the soil on a cost plus basis. In short, the evidence supports the district court's conclusion, *see* Clark v. Belleau, 114 Ga. App. 587, 151 S.E.2d 894, 896 (1966); Mion Chemical Brick Corp. v. Daniel Construction Co., 111 Ga.App. 369, 141 S.E.2d 839, 840 (1965), and therefore the evidence of nonpayment to Bullard was properly excluded.

Defendants' second contention is that the plaintiff failed to prove the liability of United States Fidelity and Guaranty Company. Moreover, even assuming that the surety is liable, the defendants contend that the judgment awarding damages jointly against Bullard and United States Fidelity and Guaranty Company exceeds the contractual limitations of the bond, because the bond here in question was an obligation to pay only for labor and materials, not damages for breach of the contract or attorney's fees. *See* United States v. Maryland Casualty Co., 147 F.2d 423, 425 (5th Cir., 1945). Also, as the bond was issued specifically in reference to a particular written contract, the obligation would not extend to an oral contract apart from the written contract.

While these contentions may have had merit if timely raised in the district court, it is well established that, in the absence of a miscarriage of justice, issues not raised or presented in the lower court will not be considered for the first time on appeal. Hill York Corp. v. American International Franchises, 448 F.2d 680, 690 (5th Cir., 1971); D. H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (5th Cir., 1971); *see* United States Fidelity & Guaranty Co. v. Hendry Corp., 391 F.2d 13 (5th Cir., 1968); Seaboard Surety Co. v. Westwood Lake, Inc., 277 F.2d 397, 403 (5th Cir., 1960); Lake County v. Massachusetts Bonding & Insurance Co., 75 F.2d 6, 8 (5th Cir., 1935). From the initial stages of this suit, the plaintiff alleged the joint liability of the surety. In the plaintiff's motion to add United States Fidelity & Guaranty Company as a defendant and in its amended complaint, it was alleged that the surety was jointly liable for plaintiff's damages. The defendant answered the complaint and admitted that the bond was in full force and effect during the time of this controversy. Although the answer denied liability to Excavators, no contention was made that the alleged damages were outside the scope of the bond's coverage. The defendant's contentions regarding United States Fidelity & Guaranty Company's liability and the extent of such liability was first raised in a post-judgment motion to alter and amend the judgment. This is simply too late.

The judgment of the district court is affirmed.