51008. BILTMORE CONSTRUCTION COMPANY, INC. v. TRI-STATE ELECTRICAL CONTRACTORS, INC.

PANNELL, Presiding Judge.
Tri-State Electrical Contractors, Inc., a subcontractor, brought an action against Biltmore Construction Company, Inc., the general contractor, seeking recovery of payment for the balance due under the contract and for certain changes or extras and materials and labor claimed required or authorized by the general contractor, and for attorney fees in the amount of $3,000, based on Code § 20-1404.
The dispute is over the changes or extras which are listed below, with the exception of the first two. Light

fixture change, $1,001; split service electrical entrance, $1,710.51; overtime labor charges, $1,217.56; sunlight fixture light stems change, $179.07; telephone service entrance, $1,002.31; standby labor, $4,195.24; punch list charge, $98.28; the alleged balance on the original contract, which was altered later by stipulation.

The defendant admitted liability for the light fixture change and the amount thereof and admitted liability for the split service change, and contested the amount thereof upon the trial, but does not contest it in this court after verdict. A verdict was directed as to the light fixture change of $1,001. Pursuant to instructions the jury rendered a special verdict which is as follows:

"1. We, the Jury, allow the Plaintiff the sum of $1,710.51 for 'split service' change.

"2. Under the evidence and charge of this Court, did the parties by way of mutual intent of both, depart from the terms of the contract relating to the payment of 'extras' as to all or any of the items outlined in Paragraph 3 below? Answer: *Yes.*

"3. If the above has been answered 'yes,' we, the Jury, allow the following amounts as extras for the Plaintiff. $1,002.31 for 'telephone service' change; $179.07 for 'light stems' change; $98.28 for 'punchlist' change; $1,217.56 for 'overtime'; $4,195.24 for 'standby' time change.

"4. Under the evidence and charge of this Court, is Plaintiff entitled to attorney's fees from defendant? Answer: *Yes.* If answer is yes, then in what amount? $3,500.00."

The trial judge in entering judgment reduced the attorney fees from $3,500 to $3,000, the amount prayed for in the complaint; then reduced the amount of the verdict as to the contract changes and extras from $8,402.97 to $8,079.41 as prayed for in the plaintiff's last amendment. The only question on appeal presented by the enumerations of error is whether the jury's finding Numbers 2 and 3 were authorized, there being exceptions to the refusal to direct a verdict as to these matters, the refusal to grant a new trial, the refusal to enter a judgment n.o.v.; and error on the charge of the court relating to the jury finding Number 2. *Held:*

1. The jury finding Number 2 is substantially controlling as to some of the items listed in finding Number 3 and will be first considered.

It has long been the law of this state that the provisions of a building contract requiring a written change order before beginning work for which recovery is sought are valid and binding provisions. *Heard v. Dooly County,* 101 Ga. 619 (28 SE 986); *Fin v. Carden,* 100 Ga. App. 270 (110 SE2d 693); *Bailey v. Martin,* 101 Ga. App. 63 (112 SE2d 807); Anno. 66 ALR 649; Anno. 2 ALR3d 620. However, where the parties by a course of conduct have departed from the terms of the contract and operated without prior written change orders, there may be a waiver, or oral variation of the provisions of the contract. Id. See also *State Hwy. Dept. v. Wright Contracting Co.,* 107 Ga. App. 758 (2) (131 SE2d 808); *Mion Chemical Brick Corp. v. Daniel Const. Co.,* 111 Ga. App. 369 (141 SE2d 839); *Clark v. Belleau, Inc.,* 114 Ga. App. 587 (2) (151 SE2d 894); *Parker v. Brown House Co.,* 117 Ga. 1013, 1015 (44 SE 807). As was said in *McDaniel v. Mallary Bros. Machinery Co.,* 6 Ga. App. 848 (66 SE 146): "Where a contract prescribes conditions precedent to a party's right to set up a cause of action or defense, and the terms are reasonable, the opposite party may usually successfully plead a failure to comply with the conditions, as a reason for the court's refusal to entertain the action or defense. But forfeiture of rights is not favored, and the courts will readily seize upon circumstances arising in the subsequent conduct or transactions of the parties and imply a waiver, in order to prevent a forfeiture because of non-compliance with formal prerequisites." An examination of such conduct, as may be here involved, is therefore in order.

The complainant testified that prior to the beginning of any work on the contract, complainant was instructed by the executive vice president of the defendant to change the specifications and install a cheaper conduit in a concrete slab, which change was complied with.

There is testimony that the electrical service entrance change, not in controversy here, was ordered orally by the superintendent on the job for the defendant, and the work ordered started, which oral change order

was subsequently rendered in writing. This written change order however, was not given until estimates of the cost of the change were delivered to the defendant.

The complainant was told verbally by the superintendent to hold up on installing the light fixtures in the workroom because of a change in the light fixtures and the layout. The complainant notified the supplier to cancel the light fixture order. New and different light fixtures for a new layout were ordered by the general contractor and charged to the contract. It does not appear, however, whether the *installation* of the new fixtures was started before receiving the written change order. The new fixtures were more expensive than those originally specified in the contract and this was the basic difference. While this item is not in controversy on this appeal it is pertinent to the question being discussed.

The complainant was instructed by the superintendent to immediately go on overtime. The complainant complied with this oral order of the superintendent and subsequently received a ratification in writing, in the form of a telegram. There is evidence that this was done after the light fixture change and stem mix-up delayed the contract.

The new lighting fixtures came without the proper light stems from which to hang the lights. A change in this was ordered orally by the superintendent and complainant ordered and installed the new stems. This again raised the price of the light fixtures change. No additional written change order was ever issued as to the stems.

Complainant was instructed orally by the superintendent that he wanted certain standby labor on the job. Complainant complied with this order, but no written change order or approval or disapproval came from the general contractor.

It is our opinion that the ratification of the oral instructions of the superintendent in the instance in which it occurred was sufficient to indicate to the complainant that he had authority to give oral instructions to begin work on a change prior to the receipt of a written change order, and that the defendant had a right to rely thereon, and that by such actions the general

contractor had waived its right to insist upon the strict terms of the contract, insofar as prior written authority to do the work is concerned.

There was no error, therefore, in submitting the question of waiver to the jury.

2. Upon application of the above principle we must hold that the light fixture stem change, the standby labor and overtime labor were not nullified because orally given by the superintendent.

Appellant contends, however, that the evidence as to the charges for overtime labor was insufficient to support a verdict as to the amount thereof. This contention is based upon the fact that the plaintiff introduced in evidence no records of the overtime kept by complainant. There was testimony by the president of complainant (the sole stockholder) that these records were kept by his wife and that they subsequently separated, and at the time of the trial he did not know where she was or where the records were. He further testified that the statement furnished the defendant showing the names, dates and amounts paid for the overtime labor was taken from these records before they were lost. This statement was introduced in evidence without objection. We hold, therefore, the evidence was sufficient to authorize the verdict as to overtime and the other charges above mentioned, and there was no error in refusing to direct a verdict in regard thereto in favor of the defendant nor in refusing to grant the motion for a new trial in relation thereto, nor in refusing to render a judgment notwithstanding the verdict in relation thereto.

3. The telephone entrance charged as an extra poses an entirely different problem. This is the charge for putting in electrical connections, such as conduits, etc., between the building itself and the telephone company's service outlet. There was testimony the plans showed the outlet as a manhole in the street and that this was a part of the contract and included in it. The complainant's evidence was to the effect that this phase of the work is customarily done as an extra as it cannot always be determined beforehand where such connection is to be made or the cost thereof. However, the defendant contends that certain language in the contract requires

that this be done, not as an extra, but as a part of the overall contract price. This language is as follows: "This contract, unless specifically deleted, includes all work normally considered within the scope of the sub-contractor's work for a complete job. . ." and "2. Intent: It is intended the plans and specifications to provide a complete and operating system including all obviously necessary items even though such items are not included in the drawings, or are not specified. 4. Errors and Omissions: All obvious errors and/or omissions in the above mentioned document shall be called to the attention of the architect/engineer at least four days prior to the bid date. If notification is not received, no extras to the original plans and specifications will be authorized by obvious errors and/or omissions." and "I. Telephone Outlets: Establish point of service and company's entrance after consultation with the local telephone company. . ."

This language of the contract does not, in our opinion, overcome as a matter of law the testimony as to custom that the telephone connection is always charged as an extra, which testimony the jury was entitled to believe. There was no error in refusing to direct a verdict, or to grant a motion for judgment notwithstanding the verdict as to this item.

4. The punch list given to the complainant by the superintendent included various items but recovery as to only one of the items is sought: — replacement lamps for the light fixtures. Ordinarily, a punch list is one listing various items requiring completion. The question here is whether the electric lamps for which recovery is sought were within the original contract or were change orders or extras, or extra costs in addition to the original contract caused by a change order or in other respects. The contract requires that 10% of the required electric lamps and other items be supplied by the contractor and left on the job as replacements. This would have required the complainant to supply 10% of the electric lamps required to replace those on the original light fixtures, but would not require the replacement lamps as to the new light fixtures for an amount in excess of the cost of those originally required to be supplied for the fixtures replaced. Complainant

president's testimony is to the effect that the lamps involved in the punch list were not a part of the original contract, but he also testified the lamps charged for were for the new fixtures, as the defendant had not ordered replacement lamps for the new fixtures when it ordered the new fixtures. The original fixture order was canceled. There was no evidence from which it could be ascertained that complainant was entitled to the entire cost of these lamps, either because he had already furnished the 10% replacement lamps for the replaced fixtures, or whether complainant was entitled only to the difference between the two, and if so, no figures were given upon which a difference could be computed. Under these circumstances, no recovery as to this item, as found by the jury, was authorized under the evidence.

5. The evidence in part was in sharp conflict and as to some of the items for which recovery was sought by the complainant a jury could have gone either way; and in our opinion, the evidence does not authorize a finding by the jury that the refusal to pay by the defendant and the subsequent defense of the action brought was in bad faith or that defendant was being stubbornly litigious so as to authorize a finding for attorney fees as expenses of litigation under Code § 20-1404.

6. The judgment is reversed as to the punch list items and as to attorney fees; otherwise, it is affirmed.

*Judgment reversed in part; affirmed in part. Quillian and Clark, JJ., concur.*

ARGUED SEPTEMBER 3, 1975 — DECIDED FEBRUARY 6, 1976.

*Miller, Beckmann & Simpson, John M. Tatum, Lamar W. Davis, Jr.,* for appellant.

*Downing, McAleer & Gaskin, James Edward McAleer,* for appellee.