**BROOKHAVEN LANDSCAPE & GRADING CO., INC., Plaintiff-Appellee,**

v.

**J. F. BARTON CONTRACTING COMPANY and United States Fidelity and Guaranty Co., Defendants-Appellants.**

**No. 81–7059.**

United States Court of Appeals, Eleventh Circuit.

May 17, 1982.

Warren O. Wheeler, Mary J. Workman, Atlanta, Ga., for defendants-appellants.

Stokes & Shapiro, J. Ben Shapiro, Jr., Sidney Haskins, Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, TJOFLAT and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The defendants J. F. Barton Contracting Company and United States Fidelity and Guaranty Company appeal from a jury verdict and award in favor of the plaintiff Brookhaven Landscaping & Grading Company, Inc., in the amount of $39,045.50. The substance of Brookhaven's diversity claim now on appeal is that Barton breached an oral agreement to pay for excavating work in excess of work Brookhaven had already agreed to perform under the terms of a subcontract.[1] With one minor exception we affirm the judgment entered by the district court.

---

1. Brookhaven sought recovery for several other items of work, but the jury award was only for the amount Brookhaven claimed for extra excavation.

## I.

On February 16, 1978, Barton entered a contract with the City of Atlanta for the construction of a portion of a road at the William B. Hartsfield Atlanta International Airport. On March 22, Barton entered a subcontract with Brookhaven for three items of work required under the prime contract. The primary portion of the subcontract consisted of excavation, embankment, and grading work to prepare the road segment for pavement. The subcontract, like the prime contract, incorporated the plans and specifications of the project.[2] Brookhaven was responsible for removing rocks and boulders from the planned roadbed. The engineers' plans for the project state at one point that: "The Contractor is cautioned that the Loop Road shall be constructed on an existing boulder fill from Station 36 + 00 to 40 + 50."[3] Brookhaven contended at trial that the drawings accompanying this cautionary instruction indicate that the boulder area began at 36 + 50 and ended at 40 + 00, a distance of 350 feet along the planned roadway instead of 450 feet. An explanatory note on the drawings states that: "2' Max. Backfill shall have neat line measurement and will be paid for as In Place Embankment in all areas where boulders are encountered in subgrade." Both parties clearly understood that it was Brookhaven's duty to remove the boulders and then backfill the area with up to two feet of earth, as opposed to one foot in all other areas. The parties also understood that Brookhaven would not be paid for the removal of these boulders as such but would be paid on the basis of the amount of "in place embankment," or dirt required to fill the roadbed to a depth of two feet in the area where the boulders were excavated. In other words, although Brookhaven was responsible for removing the boulders, it would be paid only on the basis of the unit price for the backfill. Brookhaven's foreman testified that the company factored the price of boulder excavation into the amount it bid for the backfill.

In the course of performing its work Brookhaven encountered boulders over a substantially greater distance of the roadway than was indicated in the engineers' plans. Don Lawson, the plaintiff's foreman, testified that once he became aware of boulders in areas other than those indicated on the plans, he stopped work and met with Barton's vice-president, David L. Barton. Lawson testified that on at least two occasions he told David Barton that Brookhaven had encountered unexpected boulders and that the company would have to be paid extra for removing those boulders. Lawson testified that David Barton authorized the removal of the extra boulders and agreed that the defendant would pay for the removal at the rate of $3.25 per cubic yard of boulders. Alan Batson, another of plaintiff's employees, testified that he was present when David Barton agreed to pay Brookhaven for removing the extra boulders. Barton, however, testified that he considered the boulder excavation part of Brookhaven's original contract obligation and never consented to extra payment.

After completing its job Brookhaven submitted a bill for the total work done, including the extra boulder excavation. Barton paid for the written subcontract items but refused to pay for the boulder removal. The plaintiff brought this lawsuit.

At trial the plaintiff proceeded on the theory that the boulder excavation was not covered under the original contract obligation and that plaintiff had secured an oral contract for the extra work. The plaintiff

2. In this case the plans were drawn and approved by the Atlanta Airport Engineers. The specifications consisted of Contract Specifications for Contract 52, sometimes referred to as the "Grey Book," and the Georgia Department of Transportation Standard Specifications, sometimes referred to as the "Yellow Book." The specifications classified and defined the type of work to be done.

3. "Stations" are designations of intervals which appear on the plans and are staked out at the project. The distance between stations is measured in hundred feet. Thus the distance from 36 + 00 to 40 + 50 is 450 feet.

also argued that even if the jury did not find an oral contract Brookhaven was entitled to recover under the theory of *quantum meruit*. The defendants contended, however, that the work was required as part of the original obligation and that Barton had not entered a separate oral contract for the boulder excavation. In their motion for directed verdict the defendants argued that the contract clearly provided for the removal of all the boulders, that even if there was evidence of an oral agreement the plaintiff was under a preexisting duty to remove the boulders, and that therefore there could have been no consideration for the new contract. The defendants also contended that the contract required written notice and modification in the event that extra work was required. The court denied the motion for directed verdict as well as the defendants' later motion for j. n. o. v.

The judge instructed the jury that, if it found that the boulder removal was not part of the original obligation, it could then consider whether the evidence supported an oral contract covering the boulder excavation. The judge also instructed the jury on *quantum meruit*. The jury later returned a general verdict in the exact amount the plaintiff requested for the boulder excavation.

The defendants contend on appeal that the court erroneously denied their motions for verdict n. o. v. and new trial.

## II.

At oral argument before this Court counsel for both parties demonstrated a basic lack of familiarity with essential portions of the record. When questioned from the bench, neither counsel was able to state whether the district court had ever specifically construed the contract or how the court had instructed the jury on the contract claims. In addition, although counsel for the appellants steadfastly maintained that the defendants had objected to the jury instructions on *quantum meruit*, the record reveals that the charging conference was not recorded and that the defendants did not enter their objections on the record

after the jury had been charged and before it had retired. *See* Fed.R.Civ.P. 51.

■ The rules and practice of appellate litigation presuppose a high degree of familiarity with the district court record. Rule 22(f)(7) of this Court's Rules requires that the briefs of the parties contain an accurate statement of the course of proceedings and disposition in the court below, supported by reference to the volume and page number of the record. Eleventh Cir.R. 22(f)(7); *see* Fed.R.App.P. 28(a)(3). Rule 22(a) requires that portions of the record be reproduced in an appendix captioned "Record Excerpts." Eleventh Cir.R. 22(a). Of necessity, each attorney must be very familiar with the record in order to comply with these rules and answer questions from the bench concerning the record.

■ It is the responsibility of counsel representing both appellant and appellee to discuss intelligently any portion of the record which may be relevant to a disposition of the issues on appeal. It is not an adequate response that attorneys for the parties on appeal did not participate in the trial of the case. All counsel participating in oral argument before this Court are fully responsible for the record of the case. The arguing attorney must be able to answer all relevant questions or, at the very least, have present at counsel table an attorney who is able to answer questions concerning the proceedings in the district court.

## III.

■ On this appeal the defendants first argue that the boulder excavation was clearly covered by the provisions of the written subcontract. Because the plaintiff was under a preexisting duty to remove the boulders, the defendants argue, the oral contract failed for lack of consideration. The plaintiff contends that the contract plans designated a very limited area in which boulders were to be encountered. The plans called for the removal of approximately 1,000 cubic yards of boulders over a distance of 450 feet. What the plaintiff encountered, however, was approximately

12,000 additional cubic yards of boulders over an additional distance of 1100 feet. Georgia law recognizes the subsequent oral modification and addition to a written contract as long as the additional terms are supported by separate consideration. *J.E.M. Enterprises, Inc. v. Taco Pronto, Inc.*, 145 Ga.App. 573, 244 S.E.2d 253, 255 (1978). The key question in this case, then, is whether the jury was entitled to find that the removal of the additional boulders was extra work and therefore constituted separate consideration for the oral contract.

Section 101.26 of the Georgia Department of Transportation Standard Specifications, incorporated as part of the prime and subcontracts, defines extra work as: "An item of work not provided for in the Contract as awarded but found essential to the satisfactory completion of the Contract within its intended scope." Section 104.04 provides that:

> The Contractor shall perform unforeseen work, for which there is no price included in the Contract, whenever it is necessary or desirable in order to complete fully the work as contemplated. Such work shall be performed in accordance with the Specifications and as directed, and will be paid for as provided in 109.05.

Section 109.05 provides that:

> Extra work, as defined in 101.26 when ordered in accordance with 104.04, will be authorized in writing by a Supplemental Agreement. In all cases such agreements shall be made before Extra Work is started.
>
> The Supplemental Agreement will stipulate the work to be done and the basis of payment. (Lump Sum, Unit Price or Force Account.)

The supplemental agreement provisions of the Standard Specifications were construed by the Georgia Supreme Court in *Department of Transportation v. Claussen Paving Co.*, 246 Ga. 807, 273 S.E.2d 161, 165–66 (1980), to permit a contractor to request a supplemental agreement when an alteration in the type of construction significantly increased his cost of performance. In *Claus-*

*sen* the contractor asserted that the "altered performance (building the roadbed from more ditch dirt and less sand) materially increased the cost of hauling and compacting the roadbed materials and that this alteration substantially changed the type of construction necessary to meet the compaction tests." Claussen, like Brookhaven, contended that its bid was calculated on the plans and specifications as drawn at the time of bidding and that the changes in the required roadbed work significantly unbalanced its bid. The Department disputed Claussen's assertions. As a result the Georgia Supreme Court stated that the unresolved questions of fact which must be determined by reference to the evidence "take this case out of the usual rule that the issue of whether or not the alterations were 'substantial' would be one of law for the court." *Id.*

Brookhaven's evidence established that it encountered substantially more boulders than shown in the contract plans and contemplated by the parties at the time they signed the subcontract. Because Brookhaven had to remove the extra boulders in order to prepare a proper foundation for the road, Brookhaven's performance was substantially altered. In this case, unlike *Claussen*, Brookhaven maintained that it did secure a supplemental agreement at a specified price for the extra work. Although defendants disputed the existence of the oral contract at trial, they now concede that the evidence of the agreement was sufficient to go to the jury.

█ The jury could have found that the excavation of those boulders in excess of the amount anticipated in the contract plans was in fact extra work as provided for in the specifications, and therefore could have formed the consideration for the supplemental agreement. *Claussen, supra; Excavators & Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 319–20 (5th Cir. 1973). The plaintiff's proof of increased performance resulting from a substantial and unanticipated change in the type of necessary construction satisfied the evidentiary standard announced in *Boeing Co. v.*

*Shipman,* 411 F.2d 365, 375 (5th Cir. 1969) (en banc) (standard for directed verdicts and judgments notwithstanding the verdict), recently reaffirmed in *Maxey v. Freightliner Corp.,* 665 F.2d 1367 (5th Cir. 1982) (en banc).[4]

We hold, however, that the plaintiff was only entitled to seek a supplemental agreement for excavation of boulders in excess of those shown in the area designated in the plans and necessary for the completion of its grading obligation. The plans caution that boulders may be encountered between stations 36 + 00 and 40 + 50. Brookhaven, therefore, was responsible under its written subcontract for all boulder removal between these points. The claim for boulder excavation between stations 40 + 00 and 40 + 50, a distance of 50 feet, is contradicted by the clear terms of the plans. Brookhaven's claim for this 50 feet, part of its 12,014 cubic yard calculation, is not supported by substantial evidence. The cautionary instruction is clear on its face; the cross-hatching relied on by Brookhaven to shorten the distance is merely illustrative. The record reflects that 527.22 cubic yards of boulders were removed between stations 40 + 00 and 40 + 50. At $3.25 per cubic yard, the total recovery for this portion of the roadway was $1713.47. The plaintiff's award should be reduced by that amount.[5]

The defendants next raise the issue of whether the subcontract may be supplemented by oral as opposed to written agreement. The contract specifications require written modification, but defendants admit that this requirement may be waived. *See* Ga.Code Ann. § 20–116; *Smith v. General Finance Corp.,* 243 Ga. 500, 255 S.E.2d 14, 15 (1979) (provision in a contract against waiver of contractual rights may itself be waived); *J.E.M. Enterprises, Inc. v. Taco Pronto, Inc.,* 145 Ga.App. 573, 244 S.E.2d 253, 255 (1978). Under Georgia law, waiver of written modification requirements may be established through a course of conduct between the parties. *Biltmore Construction Co. v. Tri-State Electrical Contractors, Inc.,* 137 Ga.App. 504, 224 S.E.2d 487, 488–89 (1976); *Mion Chemical Brick Corp. v. Daniel Construction Co.,* 111 Ga.App. 369, 141 S.E.2d 839, 840 (1965); *State Highway Dept. v. Wright Contracting Co.,* 107 Ga. App. 758, 131 S.E.2d 808, 812 (1963). Waiver may also apply to the other technical requirements of the subcontract, such as certified measurement by the Airport Engineers. *Clark v. Belleau, Inc.,* 114 Ga.App. 587, 151 S.E.2d 894 (1966). In this case the testimony demonstrated that Barton had orally authorized other changes in Brookhaven's performance, evidence which supported an inference that the parties established a practice of verbal modification and agreement. The evidence was sufficient for the jury to find that Barton had actual notice of the extra work, that Barton agreed to pay for the extra excavation, and that the written requirements of the subcontract were either not incorporated into the oral agreement or were waived by the defendants. *Excavators & Erectors, Inc. v. Bullard Engineers, Inc.,* 489 F.2d 318, 319–20 (5th Cir. 1973); *State Highway Dept. v. Wright Contracting Co., supra.*

Barton further contends that it was entitled to judgment notwithstanding the verdict on Brookhaven's claim in *quantum meruit.* Having determined that the evidence was sufficient to allow the jury to determine that the boulder excavation was extra work not required by the terms of the subcontract, we reject the defendants' contention that the jury should not have been allowed to consider this alternative basis of recovery. The Georgia Supreme Court has held that recovery in *quantum meruit* is appropriate in cases such as this one when the required performance falls outside the terms of the original obligation and when the evidence does not support a supplemental agreement. *Department of Transporta-*

4. The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

5. The figures come from plaintiff's exhibit 11 and the testimony of Don Lawson and Alan Batson.

tion v. Claussen Paving Co., 246 Ga. 807, 273 S.E.2d 161, 166 (1980); see Ga.Code Ann. § 3–107; Puritan Mills, Inc. v. Pickering Construction Co., 152 Ga.App. 309, 262 S.E.2d 586, 588 (1979). Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency. Fed.R.Civ.P. 8(e)(2). A party may not, however, recover separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other. Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781, 801 (5th Cir. 1973).[6]

## IV.

 Barton finally asserts four arguments to support its contention that the district court erred by denying its motion for a new trial. The denial of a motion for a new trial will be reversed only upon a showing of clear abuse of discretion by the trial court. Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1289 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). We have dealt with two of these arguments in the preceding section. The remaining two are without merit.

 The district court did not err, as Barton suggests, by allowing the plaintiff's foreman to testify on the custom of the construction industry in Atlanta regarding the removal of unanticipated rock and boulders. Georgia law allows evidence of known and established usage to aid in the construction of contracts. Ga.Code Ann. § 20–704; Puritan Mills, Inc. v. Pickering Construction Co., 152 Ga.App. 309, 262 S.E.2d 586 (1979); see Biltmore Construction Co. v. Tri-State Electrical Contractors, 137 Ga.App. 504, 224 S.E.2d 487, 490 (1976). The evidence was admissible and relevant.

 Similarly, the district court did not err in allowing Brookhaven to introduce a chart of the road segment which depicted the areas of anticipated and unanticipated boulders in green and red coloring. The court had already heard testimony substantiating the accuracy of the depiction and there was no challenge to its technical correctness. As a result, the drawing was properly introduced to aid in the understanding of previously introduced testimony. Patton v. Archer, 590 F.2d 1319, 1323 (5th Cir. 1979). Defendants additionally argue, however, that the chart was prejudicial because it depicted the boulders not shown on the plans in red and captioned them "Additional and Unanticipated." While we seriously doubt the merit of this contention, we find it unnecessary to decide the issue because the defendants did not object to the exhibit on the basis of prejudice at the time it was offered. Rule 46 of the Federal Rules of Civil Procedure states: "[I]t is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor * * *." The purpose of Rule 46 is to inform the trial judge of possible errors so that he may have an opportunity to consider his ruling and make changes when advisable. Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541, 552 (5th Cir. 1968). It is therefore the general rule that issues not raised and preserved below will not be considered on appeal. In addition, "[i]t is fundamental that where an objection is specified it is deemed to be limited to the ground or grounds specified and it does not cover other grounds not specified." Id. Failure by defendants to object on the ground of prejudice or to request a limiting instruction to the jury constitutes a waiver of objection on that ground.

The judgment of the district court is AFFIRMED except as to the reduction in the plaintiff's award in the amount of $1713.47. We instruct the district court to enter judgment accordingly.

---

6. Barton argues elsewhere in its brief that the district court should not have charged the jury on quantum meruit. Because Brookhaven was entitled to present this theory to the jury, the charge was clearly appropriate. We note, however, that counsel for Barton never entered its objections to the charges on the record and did not specify the charges to which he objected after the charges were made but before the jury retired. Fed.R.Civ.P. 51.