## In the Matter of SEMINOLE PARK AND FAIRGROUNDS, INC., Bankrupt.

## WESTINGHOUSE ELECTRIC CORPORATION, Appellant,

v.

## Robert DYER, Trustee in Bankruptcy for Seminole Park and Fairgrounds, Inc., Appellee.

### No. 73–1065.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1974.

Ray W. Richardson, Douglas J. Milne, Jacksonville, Fla., for appellant.

Robert Dyer, pro se.

Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Proving that the odds are not always in favor of the track, this and the companion case [1] involved not one, but two, Chapter X bankruptcy reorganization proceedings of Seminole Downs Race Track. In pedestrian, not equestrian, terms the question is whether the 1955 lease contained, as the 1967 Florida UCC requires a written "consent" or "disclaimer" by the landlord to the fixtures security reserved for the 1970 installation by Westinghouse of the people-moving facilities of an escalator and elevator in the race track clubhouse-grandstand. Since our negative answer means *that* vis-a-vis landlord, Westinghouse cannot remove the facilities, the question then comes down further to the value, if any, which the supplier-Westinghouse has in the conceded perfected security interest. The Referee in Bankruptcy, as special master, found the value of a non-removable people-moving apparatus to be zero largely since the debtor's leasehold of the whole track enterprise had been, to everyone's chagrin but acquiescence, a like zero.

On principle the Master and the District Judge were right. On principal we hold a remand is in order to establish the "positive" dollar value of a "negative".[2]

■ It all came about this way. On the Trustee's concession that Westinghouse had a perfected security interest,[3] the special master set the case down to

---

1. Dyer v. First National Bank at Orlando, 5 Cir., Oct. 17, 1974, 502 F.2d 1012.

2. In Blackburn v. State, 1927, 31 Ariz. 427, 254 P. 467, the trial court admitted evidence that a witness could find no hair on a blood spot. The defendant appealed, claiming that this evidence was wholly "negative" and that its admission was error. In disposing of this contention, the court said: " . . . positive testimony is entitled to more weight than negative testimony, but by the latter term is meant

negative testimony in its true sense and not positive evidence of a negative, because testimony in support of a negative may be as positive as that in support of an affirmative."

3. This was stipulated. On appeal Trustee attempts to challenge this for technical errors in recordation notice but we decline to consider it. Excavators & Erectors, Inc. v. Bullard Engineers, Inc., 5 Cir., 1973, 489 F.2d 318, 320.

determine the value of the admitted secured interest. See Bankruptcy Act § 197; 11 U.S.C.A. § 597.

### Consent Thee Not To Desecration

■ Florida's UCC differs from that of most states with respect to security interests in fixtures.[4] By the 1967 amendments to § 679.313(2)(a) [5], Florida requires as the price for perfection of a fixtures security interest against a person with an interest in the real estate that such person in writing consent (or disclaim) to a security interest in any fixtures to be affixed to the realty —whether the security interest "attaches" to the fixture before or after installation. The official 1962 UCC § 9–313 does not require such consent if the interest "attaches" *before* installation.[6]

4. The elevator and escalator are characterized as fixtures by both parties to this appeal.

5. F.S.A. § 679.313(2)(a)

A security interest which attaches to goods which are to become fixtures is invalid against any person with an interest in the real estate at the time the security interest in the goods is perfected or at the time the goods are affixed to the real estate, whichever occurs later, who has not in writing consented to the security interest or disclaimed an interest in the goods as fixtures.

As originally enacted, following the official UCC, it provided

A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

\* \* \* \* \*

(4) The security interests described in subsections (2) and (3) do not take priority over:

(a) A subsequent purchaser for value of any interest in the real estate; or

(b) A creditor with a lien on the real estate subsequently obtained by judicial proceedings; or

(c) A creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances.

If the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected. A purchaser of the real estate at a foreclosure sale other than an encumbrancer purchasing at his own foreclosure sale is a subsequent purchaser within this section.

Subsection 4 was repealed. Laws 1967, c. 67–264, § 2, eff. July 1, 1967. New subsection (2)(b) replaces it:

\* \* \* \* \*

(b) A security interest in goods which are or become fixtures takes priority as to the goods over the claims of all persons acquiring interests in the real estate subsequent to the perfection of such security interest or the affixing of the goods to the real estate, whichever occurs later.

The parties accept Westinghouse's thumbnail sketch of the history and purpose of the amendments:

When the Code initially became effective in Florida on January 1, 1967, the provisions of Section 679.313, Florida Statutes, were those of the 1962 Official Text. However, effective July 1, 1967, Section 679.313, was modified by the Florida legislature. The legislative journals show no source for the language in the current statute; however, the language is identical with a similar portion of the amended Ohio statute (Ohio Rev.Code, Tit. 13, Sec. 1309.32 (1963)). The differences, though, are not considered as controlling in construing the term "in writing consented", since the identical term appears in both versions although in somewhat different contexts.

Under the Official Text provisions initially adopted in Florida, a party, whose lien "attached" *prior* to physical affixation of the goods to the premises, could acquire priority over existing interests in the realty without requirement of consent. See note, Fixture Liens under Chapter 9 of the Uniform Commercial Code in Florida, Vol. XXI, U. of Fla. L.R., pp. 229, 234–237 (1968). It was only when attachment of the lien occurred *after* affixation, that consent of existing realty interests was required to establish priority over those interests. Under the present amendment, *both* perfecting the lien and affixation must have preceded existence of the realty interest to avoid the requirement for "consent" to prevent subordination. But in both versions, the identical words "in writing consented" appear wherever the requirement for consent exists.

Brief for appellant at 7–8.

6. The 1972 Amendment to Official § 9–313 relaxes the rule still further (permitting perfection by filing up to 10 days after installation) if the security interest is a "purchase money security interest".

Westinghouse never obtained direct, express consent to the security interest from the Debtor's landlord and, apparently upon the Trustee's urging or otherwise, the landlord now expressly refuses to consent to it—or to permit the removal of either fixture.[7]

Thus to satisfy § 679.313(2)(a) Westinghouse has to go back to the 1955 lease with the Debtor's assignor. The argument starts with the fact that the lease contemplated that the premises would be used for a race track for which lessors would have a net profit percentage rental and which expressly permitted virtually unlimited alterations and additions to the premises.[8] Additionally the lease on termination permitted the removal of fixtures and personal property.[9]

To all of this the Trustee counters with other provisions which, requiring lessee to indemnify against liens, impliedly negatived any consensual agreement to permit creation by lessee of security interests superior to the landlord[10] and very carefully restricted the fixture removal privilege (see ¶ 3D, note 9, *supra*).[11]

Stressing heavily the 1955 lease-recognized privilege of extensive alterations and additions to the premises (see ¶ 3A, note 8, *supra*) and the right of fixture removal (see ¶ 3D, note 9, *supra*) West-inghouse pressed what the parties describe as "old" mechanics lien cases from which to derive the 1967 "consent" to a 1970 security interest. See, e. g., Taylor v. Ferroman Properties, Inc., 1931, 103 Fla. 960, 139 So. 149, 150. We agree with both the Referee in Bankruptcy as special master and the District Judge in rejecting this argument.

The 1967 amendments (see note 5, *supra*) imported into Florida security practice the requirement of a written consent or a written disclaimer. In the light especially of the immediate response to the official § 9–313(2) (see note 5, *supra*) Florida could not have meant to throw the whole thing back on mechanics lien practices including § 713.10 and cases both before and after it.

■■ A reading of the Florida addition to UCC § 9–313 makes it apparent the drafters contemplated an express agreement between the holder of a real estate interest and the potential fixture-secured party. We hold a general consent to improvement and remodeling can hardly be construed to constitute either a landlord's consent to security interests or a disclaimer of an interest in fixtures.

And that is especially so when these provisions are read in the context of the

---

7. Although not literally revealed in the scarce record, or scarcer appendix, the Master and District Judge apparently proceeded on the statement made by landlord's counsel that § 679.313(2)(a) would not be waived. The situation is therefore different from that in In re Country Lad Foods, Inc., 5 Cir., 1974, 500 F.2d 393 [Sept. 6, 1974].

8. Lessees shall have the right and privilege of renovating and remodeling any and all buildings and appurtenances located on the premises and also the right and privilege to construct such other buildings, appurtenances, improvements and additions whatsoever on the leased premises, and also shall have the right to dredge lakes and reshape the topography of the land . . . [¶ 3A].

9. . . . . Lessees, at the termination of this lease, shall have the right to remove any and all fixtures, equipment or other items of personal property belonging to the Lessees, provided the removal of the same shall not damage the demised property or any part thereof. [¶ 3D].

10. [P]rovided, however, *and it is especially understood and agreed*, that all such renovation, remodeling and building construction or improvements, and the maintenance thereof, shall be at the expense of the Lessees and Lessees will save the Lessors harmless from any and all liens and claims arising from or in connection with any such improvements placed upon the property [¶ 3A].

11. It is further understood and agreed by and between the parties that at the termination of this Lease all *permanent improvements* placed upon the premises by the Lessees shall become and be the sole and exclusive property of the Lessors. [¶ 3A].

provisions brought to light by the Trustee. If anything can be deemed a "permanent improvement", certainly a second story on a building is one. Similarly, if follows, ways and means of reaching that second story must fairly be deemed "permanent improvements"— even though they are physically removable.

We conclude the District Court was correct in holding that Westinghouse had no right of removal vis-a-vis the landlord.

### Accentuate The Positive-Negative

But that does not dispose of the case, for Florida UCC § 679.313 does not *void* the security interest. Indeed, as discussed (see note 3, *supra*), the Trustee conceded it is a perfected security interest. On oral argument the Trustee further conceded there is enough money in the estate to satisfy not only the landlord's claims, but the full amount of Westinghouse's up to the Bankruptcy Act § 197 value of the fixture security interest.

In fixing the zero value the special master considered only the two factors of (i) no right of removal and (ii) the zero value of the leasehold. Westinghouse urges that this is too narrow as it excludes the possible negative value which the facilities might have were Westinghouse to exercise the § 679.503 right to render them unusable.[12] Whether any such non-usable value can, or may under Florida law, be constructed, who the experts in support thereof will be or the values to be fixed are not matters on which we should make a speculation.

But there should be a remand for an evidentiary hearing on this single as-

pect. If it produces an economically acceptable value it will be time enough for the District Court in the first instance to then determine whether that value is legally cognizable.

Affirmed in part, remanded in part.

---

12. *679.503 Secured party's right to take possession after default*

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place

to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 679.9–504.

This is section 9–503 of the 1962 Official Text without change.

