**BLACK HILLS INSTITUTE OF GEO-LOGICAL RESEARCH; and Black Hills Museum of Natural History Foundation, Inc., a non-profit corporation, Appellants,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE; Manual Lujan, Jr., Secretary of the Department of Interior; Cheyenne River Sioux Tribe; and South Dakota School of Mines and Technology, Appellees.**

No. 92–2252SD.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided June 26, 1992.

Rehearing Denied July 8, 1992.

Patrick Duffy and Mark F. Marshall, Rapid City, S.D., for appellants.

Timothy W. Joranko, Eagle Butte, S.D., and Robert A. Mandel, Rapid City, S.D. (Gene N. Lebrun, Rapid City, S.D., appeared on the brief), for appellees.

Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

This case concerns the care and custodianship of a 65 million-year-old pile of bones named Sue. Ever since researchers uncovered the mammoth remains of a Tyrannosaurus rex in western South Dakota in August, 1990, the ten tons of bones have sparked a keen ownership battle. Federal agents seized the bones on May 14, 1992, on orders of the United States Attorney for the District of South Dakota as part of an investigation into possible violations of the Antiquities Act. 16 U.S.C. § 433 (1988).

The ownership of these bones is not before this court.[1] Rather, appellants sought a preliminary injunction requiring the federal government to return the fossil to them for safekeeping until the ownership question is answered. The motion was based on a claim that the fossil is being irreparably damaged in the government's hands because of a lack of expertise in handling the archaeological exhibit.

The district court rejected the motion without addressing the allegations claiming damage to the fossil. The district court framed the question merely as an attempt to regain evidence seized in a criminal investigation. "Stripped of needless verbiage, plaintiffs seek in this civil matter the return of evidence lawfully seized pursuant to the rules of criminal law." *Black Hills Institute v. United States*, Civ. 92–5070, slip op. at 2 (D.S.D. May 28, 1992).

The district court's denial of the preliminary injunction is on appeal to this court in a separate action. Briefing has been expedited by order of this court. Appellants, meanwhile, have moved under 8th Circuit R. 8A for an order granting custody of the bones to their control pending the appeal of the preliminary injunction. Appellants assert extraordinary relief is required to prevent further damage to this rare paleontological find. For the following reasons, we remand this case to the district court with orders to hold a hearing at the court's earliest possible convenience to determine an appropriate custodian for the dinosaur bones, giving full consideration to the strong public interest in preservation of the fossil.

I.

During a break from a fossil excavation at another site, Sue Hendrickson[2] discovered dinosaur bones on Maurice Williams'

---

1. Litigation is ongoing as to the rightful owner of Sue. The combatants include the federal government, the Cheyenne River Sioux Tribe, and the Black Hills Museum of Natural History Foundation, Inc.

2. The fossil has been named Sue after its discoverer.

ranch. Williams is an Indian, and the land where the fossil was discovered was held in trust by the United States for the sole benefit of Williams. The land is within the boundaries of the Cheyenne River Sioux Indian Reservation. Williams sold the rights to excavate the fossil to the Black Hills Institute of Geological Research.

For 17 days, the Institute excavated the fossil, which is the largest and most complete Tyrannosaurus rex skeleton known to man. The Institute moved the fossil to Hill City, South Dakota, for public display and research.[3] Federal officers, upon order of the United States Attorney for South Dakota, seized the fossil on May 14, 1992. The seizure was based on an alleged violation of the Antiquities Act, which bans the removal of antiquities from federal land.[4]

Appellants have submitted affidavits to the district court and to this court from experts who have charged that the government's storage of the fossil in a machine shop at the South Dakota School of Mines and Technology is causing irreparable damage to the specimen. Therefore, extraordinary relief is sought.

## II.

As an initial matter, we must determine whether this court has jurisdiction to hear this claim for injunctive relief. Appellants did not seek return of the fossil under Fed.R.Crim.Pro. 41(e). Appellants contended a motion under Rule 41(e) possibly could have delayed return of the fossil until the United States Attorney made reasonable efforts at completing the criminal prosecution. Instead, appellants ask this court to exercise its equitable powers to determine custody of the fossil during the pendency of the litigation.

■ Rule 41(e) is the typical instrument to seek the return of seized property after an indictment has been issued. However, a motion prior to the filing of criminal charges is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure. *Matter of Search of 4801 Fyler Avenue,* 879 F.2d 385, 387 (8th Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Federal courts have recognized an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts. *Id.; United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297 (3d Cir.1978); *Mr. Lucky Messenger Service Inc. v. United States,* 587 F.2d 15, 16–17 (7th Cir.1978); *Hunsucker v. Phinney,* 497 F.2d 29, 32 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). This remedy should be exercised cautiously and subject to general equitable principles. *Matter of Search,* 879 F.2d at 389; *Mr. Lucky Messenger,* 587 F.2d at 17; *Hunsucker,* 497 F.2d at 32.

■ Among the factors courts consider in granting this "anomalous jurisdiction" is whether the action involved a callous disregard for constitutional rights. *Matter of Search,* 879 F.2d at 387; *Mr. Lucky Messenger,* 587 F.2d at 17. Just as in *Mr. Lucky Messenger,* the legality of the seizure has not been challenged for the purposes of this motion for injunction. Moreover, as in *Mr. Lucky Messenger,* appellants do not seek exclusion of the fossils from evidence. Therefore, this court looks not to the legality of the seizure, but the reasonableness of it. *Mr. Lucky Messenger,* 587 F.2d at 17.

■ The federal government enlisted dozens of Federal Bureau of Investigation agents, Park Rangers, and members of the South Dakota National Guard in an early morning raid to seize 10 tons of dinosaur bones. The rationale for the seizure of this priceless, archaeological treasure was based on an investigation into criminal charges that could result in, at most, 90 days in jail and a $500 fine. The seizure came nearly two years after the bones were found and excavated under the glare

---

**3.** After excavation, the Institute transferred the rights to the fossil to the Black Hills Museum of Natural History Foundation, Inc.

**4.** Under the Antiquities Act, the removal of any object of antiquity from federal land is punishable by a $500 fine and/or 90 days in jail. 16 U.S.C. § 433 (1988).

of worldwide publicity. The federal government has stored this irreplaceable relic under circumstances that even its own experts describe as inadequate. Moreover, the government has admitted it does not need the 10 tons of bones for evidence in its criminal investigation. Appellants, for their part, have agreed to stipulate that the bones are a 65–million–year–old skeleton of a Tyrannosaurus rex found on the property the government claims as its own. Appellants have also agreed to provide documentation and access to the relic for any criminal investigation. Based on these facts, we find the government's rationale for the seizure inadequate. The seizure not only keeps appellants from accessing the fossil, but deprives the public and the scientific community from viewing and studying this rare find. In fact, a test on the fossil skull to be conducted by the National Aeronautics and Space Administration was cancelled because of the seizure. Therefore, this factor militates strongly in favor of equitable relief.

██ Other factors considered by courts include whether the party seeking return has an individual interest in and need for the property, whether the party has an adequate remedy at law, and whether the property would be irreparably damaged by a failure to return. *Matter of Search*, 879 F.2d at 387; *Mr. Lucky Messenger*, 587 F.2d at 17. The first two factors would support an order granting equitable relief. Appellants clearly have an interest in preserving the fossil and studying it. Moreover, appellants have made the fossil available to the public and scientific community for display and research. Secondly, appellants lack an adequate remedy at law. If the contentions of appellants' experts are true, the fossil continues to suffer damage as the legal imbroglio surrounding it untangles. The final factor gives us pause because this court is in no position to make a

determination whether the fossil is being irreparably damaged in its present care. Nevertheless, appellants clearly have made at least a prima facie showing that this damage is probable and remedial steps are necessary. Based on these factors and due to the extraordinary nature of this case, we find that the court's equitable jurisdiction is properly invoked.[5]

The district court found that return of the fossils would jeopardize a criminal investigation. As appellants admit, if this were a run-of-the-mill case or if appellants were seeking to suppress evidence, the balance of the equities probably would drown them. But despite the government's contention, this is not a run-of-the-mill case.

██ The Foundation does not dispute for purposes of this motion that the government legally seized the bones as evidence in a criminal case. While no criminal charges have been filed, the government may retain seized goods for a reasonable time while the investigation and prosecution proceed. *608 Taylor Avenue*, 584 F.2d at 1299. But when the owner of seized property seeks injunctive relief for the return of property while the case remains in the investigative stage (i.e. before criminal charges are brought), the district court must also balance the government's interest in retaining the property against the owner's right to get it back. *Id.* at 1304. Until criminal charges are brought, the property owner is to be considered an innocent bystander. *Id.* at 1301. When the government's interest in retaining the property is merely to keep it as evidence, the court "should consider whether this purpose would be equally well served by the alternatives to holding the (evidence) itself." *Id.* at 1304. For instance, if a robber runs from a bank with stolen money and stumbles into a car, the government may lift fingerprints from the car, photo-

---

**5.** Whether federal courts have jurisdiction over the tribe, however, is problematic. Indian Tribes are separate sovereigns and enjoy absolute immunity from suit unless the tribe or Congress grants the right to file suit in federal court against the tribe. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56, 98 S.Ct. 1670, 1675–76, 56 L.Ed.2d 106 (1978). Therefore, since the issue of sovereign immunity is jurisdictional, *Ramey Construction Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir. 1982), we direct the district court on remand to determine whether the tribe or Congress has expressly waived immunity from jurisdiction, or whether the tribe must be dismissed from this action.

graph it, or otherwise preserve evidence. But they may not in all cases insist on holding the car itself as evidence to be presented to the jury. *Id.* at 1303. In this case, the interest in returning the property is even more compelling. Not only appellants, but the public and the scientific community, would benefit from removing the fossil from its present location in a machine shop at the South Dakota School of Mines and Technology to a location where the preservation of the fossil could be assured.

The government does not need to retain as evidence the fossil which the government itself described as "priceless" in order to preserve evidence in a petty misdemeanor criminal prosecution. The presence of the evidence is conclusive and well-documented. No one would seriously suspect that the Foundation intends to destroy the fossil. But even if the fossil was lost or destroyed, it would have no impact on any criminal investigation. The government may take whatever steps necessary to establish proof of the evidence before returning it. Moreover, the district court could impose stringent conditions on the care and preservation of the fossil, including the requirement that it be available as evidence in the criminal trial.

▮ Despite our conclusion that the government does not need to retain the fossil as evidence in a criminal investigation, we are unable to determine whether it is appropriate to return the fossil to appellants for safekeeping. Therefore, in light of the emergency nature of this case, we remand to the district court with directions to hold a hearing at its earliest possible convenience to determine proper custodianship of the fossil during the pendency of this case.[6] The court may consider such evidence as it deems appropriate to determine the proper conditions and place for storage and custody of the fossil. If the parties could come to a common understanding on this issue, the court as well as the public at large would be well served. In any event, resolution of this custodianship issue should proceed forthwith to reduce damage to the fossil. The district court may also order steps requested by the government to document and preserve evidence for any criminal prosecution. Finally, the district court may determine a method of allocating costs for any transportation or care required by its order.

### III.

We remand to the district court to hold a hearing at its earliest possible convenience to determine the proper temporary custodian for the dinosaur bones pending final disposition on the main action to determine ownership. The district court may also take any steps necessary to preserve evidence in any criminal prosecution stemming from the find and may allocate costs associated with any transportation or storage found necessary.

---

6. This order complies with the procedure used by courts in caring for the wreckage of Spanish galleons discovered by divers off America's coast. Since moving the recovered wreckage during the ownership litigation was dangerous and difficult, the district court appointed the finders custodian of the wreckage until the case was resolved. *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 335 n. 5 (5th Cir.1978); *Subaqueous Exploration & Archaeology Ltd. v. Unidentified Wrecked and Abandoned Vessel,* 577 F.Supp. 597, 600 (D.Md.1983), *aff'd without opinion,* 765 F.2d 139 (4th Cir.1985).