985 F.2d 935
 24 Fed.R.Serv.3d 957
 J. Douglas MILLER, Plaintiff-Appellee,
v.
R. Richard BITTNER; Jeffrey S. Bittner; Carlin, Hellstrom
& Bittner, Defendants-Appellants,
Richard L. Braunstein; Charles J. McKerns; Dow, Lohnes and
Albertson; First Trust & Savings Bank; Banks of
Iowa, Inc., Defendants,
Tom Riley; Peter C. Riley; Michael Sheehy; Tom Riley Law
Firm, P.C., Appellees.
 No. 91-3668.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 26, 1992.
Decided Jan. 19, 1993.
 
 1
 Jeffrey S. Bittner, Davenport, IA, argued, for defendants-appellants.
 
 
 2
 Tom Riley, Cedar Rapids, IA, and Michael Noyes, Davenport, IA, argued, for plaintiff-appellee.
 
 
 3
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and STUART,* Senior District Judge.
 
 
 4
 STUART, Senior District Judge.
 
 
 5
 This is an appeal from an order of the district court denying sanctions pursuant to Federal Rule of Civil Procedure 11 against plaintiff and his attorneys. The motion for sanctions was filed after the trial court dismissed plaintiff's lawsuit on the ground that he lacked standing to bring the causes of action alleged. For reasons set forth herein, we affirm.
 
 
 6
 Plaintiff, J. Douglas Miller, is the former spouse of Vickie Palmer, a descendant of the founder of Palmer College of Chiropractic in Davenport, Iowa. Defendants, R. Richard Bittner and Jeffrey S. Bittner, are attorneys with the firm Carlin, Hellstrom, and Bittner ("Bittners"). Bittners have represented the Palmer family for many years, including Vickie Palmer during the dissolution proceedings from Miller.
 
 
 7
 A marital asset in which both Miller and Palmer held an interest was Signal Hill Communications. Signal Hill Communications was formed when Palmer exchanged stock of Palmer Communications, Inc., which was in her name only, for a promissory note of over $9 million, and assets of Palmer Communications, Inc. The note was issued to Palmer only.
 
 
 8
 During the dissolution proceedings, Miller and Palmer executed a property settlement agreement that was subsequently incorporated into the dissolution decree. In that agreement, Miller was to receive only those items of personal property in his possession or specifically awarded to him. The agreement specifically provided that "[a]ll other personal property shall be Vickie's property and is to be delivered, transferred and conveyed to her whether it be in joint names or separate names." Edward B. Harris represented Miller during the dissolution proceedings.
 
 
 9
 A dispute concerning the ownership of Miller's pension fund in Signal Hill Communications, which was marital property subject to the settlement agreement, subsequently arose between Miller and Palmer. Miller claimed he was entitled to pension funds held in his name under Signal Hill's retirement plan.
 
 
 10
 Following a hearing, the dissolution court determined because the "pension plan was never specifically requested, mentioned or identified in any manner during these discussions or during the presentation of the settlement agreement, this Court sees no reason why to disturb its understanding that property not specifically mentioned was to become the property of the petitioner [Palmer]." Harris failed to inform Miller of the court's ruling. Instead, Harris paid Miller $10,000 from his personal account, and informed Miller the money represented his pension plan funds.
 
 
 11
 Miller informed Harris while dissolution negotiations were taking place that he was considering filing a lawsuit against these defendants. Harris accompanied Miller to the Riley Law Firm to discuss the lawsuit. Harris did not at that meeting disclose the dissolution court's ruling or the fact that he had paid Miller $10,000 out of his own pocket.
 
 
 12
 Miller then commenced this action alleging securities fraud, negligent misrepresentation, and tortious interference with business relationships based on the transaction exchanging Vickie's stock in Palmer Communications referred to above. Miller was represented by Tom Riley, Peter C. Riley, Michael E. Sheehy and the Tom Riley Law Firm ("Rileys").
 
 
 13
 Bittners filed a motion to dismiss contending Miller lacked standing to assert a claim to Signal Hill, or its assets, under the dissolution agreement and because the dissolution court awarded the pension fund to Palmer. Pertinent settlement papers and the dissolution court's ruling were attached. Bittners further contended that Miller failed to state a claim upon which relief could be granted under federal securities law. Concluding that the causes of action urged by plaintiff belonged to Palmer as a result of the divorce settlement agreement executed by Miller and Palmer, Judge Vietor dismissed Miller's complaint holding that he had no interest in the causes of action alleged and therefore lacked standing to maintain the action. Miller's subsequent motion to amend findings and judgment was denied.
 
 
 14
 Pursuant to Federal Rule of Civil Procedure 11, Bittners filed a motion for sanctions against Miller claiming that Miller had allowed his attorneys to file a complaint with allegations he knew to be false, and that Miller should have known that any action associated with Signal Hill Communications had been awarded to Palmer in the dissolution proceedings. Bittners also filed a motion for sanctions against the Rileys contending they had committed fifteen separate violations of Rule 11. Rileys filed a Rule 11 motion against Bittners which was denied. No appeal has been taken from the ruling on Rileys' Rule 11 motion.
 
 
 15
 Judge Vietor recused himself from ruling on these motions and the matter was transferred to Judge Wolle who concluded Bittners failed to prove their Rule 11 motions against either Miller or the Rileys. Bittners appeal from that ruling, contending that the district court erred in several respects.
 
 
 16
 Federal Rule of Civil Procedure 11 states, in relevant part:
 
 
 17
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....
 
 
 18
 "In determining whether a violation of Rule 11 has occurred, the district court must apply an 'objective reasonableness' standard." N.A.A.C.P.--Special Contribution Fund v. Atkins, 908 F.2d 336, 339 (8th Cir.1990) (quoting O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir.1987)). The proper standard of review for " 'reviewing all aspects of a district court's Rule 11 determination[ ]' " is an abuse of discretion standard. Id. (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990) (rejecting a three-tiered standard of review)). " 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' " Id. (quoting Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2460). The reviewing court must give deference to the district court's determination because that court is "best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted...." Cooter & Gell, 496 U.S. at 404, 110 S.Ct. at 2460. Mindful of the proper standards, we turn our discussion to the Rule 11 claims against Miller.
 
 MILLER
 
 19
 Bittners claim the district court erred in refusing to sanction Miller because Miller knew or should have known he did not own the cause of action as a result of Signal Hill Communications being awarded to Palmer in the dissolution proceedings. The district court concluded Miller reasonably relied on his attorneys in believing he had a viable lawsuit and was "not liable for sanctions on the basis of his flawed memory and understanding about the dissolution settlement and decree." The court was well within his discretion in reaching that conclusion on the objective reasonableness standard.
 
 
 20
 Following the dissolution, Miller and attorney Harris petitioned the dissolution court for a ruling on the disposition of the pension plan funds. The court ruled that those funds had been transferred to Miller's former spouse pursuant to the terms of the settlement agreement. Harris never disclosed this ruling to Miller. Instead, Harris paid Miller $10,000 of his own funds while representing the money was from the pension plan funds. This evidence supports a finding that Miller did not know the effect of the dissolution property settlement on this lawsuit. A layman could reasonably have believed that a chose in action was not covered by the property settlement.
 
 
 21
 Bittners also assert "that Miller allowed his attorneys to file a complaint which was replete with defamatory factual allegations Miller knew to be false." The record does not require such a finding. The trial court determined Miller could reasonably rely on his attorneys. We conclude the district court did not abuse its discretion in refusing to impose Rule 11 sanctions against Miller.
 
 RILEYS
 
 22
 Bittners assert numerous allegations of error committed by the district court in refusing to order Rule 11 sanctions against the Rileys. Some of the allegations are repetitive and rather confusing; therefore, Bittners arguments will be summarized as follows: First, the court abused its discretion in not imposing Rule 11 sanctions because Rileys failed to conduct a reasonable prefiling investigation of either the facts, including Miller's dissolution file, or the applicable law. Second, the district court erred in "failing or refusing" to rule that the actions of the Rileys, after they knew the terms of the divorce settlement, violated Rule 11. Finally, the trial court improperly considered certain facts in reaching its decision.
 
 
 23
 Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing. O'Connell, 812 F.2d at 395. To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir.1991). Whether the attorney's inquiry is reasonable may depend on factors such as whether counsel had to rely on a client for factual information, or whether the attorney depended on forwarding counsel. Fed.R.Civ.P. 11, Notes of the Advisory Committee, 1983 Amendment. The district court must determine "whether a reasonable and competent attorney would believe in the merit of an argument." Dodd Ins. Servs. v. Royal Ins. Co. of America, 935 F.2d 1152, 1155 (10th Cir.1991).
 
 
 24
 Applying these principles, we conclude the district court did not abuse its discretion in denying Rule 11 sanctions against the Rileys. When Miller went to the Rileys' office to discuss pursuing the present action, he was accompanied by Harris. At that time, Miller believed he had a claim to the pension funds, and he relayed that belief to the Rileys. Harris failed to advise Miller or Rileys of the dissolution court's ruling on the pension fund issue, which if applied to the cause of action upon which this suit is based would mean that it had been transferred to Palmer. Harris did not tell the Rileys that he had paid Miller $10,000 from his personal account. Instead, Harris represented that the money was from the pension plan fund. "An attorney receiving a case from another attorney is entitled to place some reliance upon that attorney's investigation." Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 446 (5th Cir.1992). A lawyer could reasonably expect another lawyer to inform him of previous adverse rulings that might affect the viability of the contemplated lawsuit.
 
 
 25
 "An attorney is [also] entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1470 (2d Cir.1988), rev'd sub nom. on other grounds, Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). For example, in Albrecht v. Stranczek, 136 F.R.D. 155 (N.D.Ill.1991), the court held that the attorney's investigation was reasonable when the client failed to indicate that the subject property had been foreclosed upon or that the client had a verbal agreement with the bank allowing him to find a buyer and repurchase the property for purposes of sale. Id. at 156. The court reasoned that the attorney had no reason to question the client's representation. Id. But see Lloyd v. Schlag, 884 F.2d 409, 413 (9th Cir.1989) (merely relying on the word of the client as to the legal and factual underpinnings of the case violated Rule 11 given counsel's experience and access to relevant information).
 
 
 26
 Here, Rileys relied on statements from Miller, and from counsel who represented Miller in the dispute concerning the property. Rileys had no reason to question the representations made by either.
 
 
 27
 We agree with the district court's assessment that in hindsight Rileys should not have placed such heavy reliance on Miller and Harris's factual statements, and they should have investigated the dissolution file. Had the district court determined sanctions were warranted under these circumstances we would have affirmed that determination. However, the district court concluded that the Rileys' actions passed the objective standard, albeit "just barely." Because either view of the evidence is permissible, "the factfinder's choice between them cannot be clearly erroneous.... When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable." Cooter & Gell, 496 U.S. at 400-01, 110 S.Ct. at 2458 (quoting Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).
 
 
 28
 Bittners next argue that the district court erred in failing to specifically address whether Rileys violated Rule 11 by continuing to prosecute the lawsuit after they knew the terms of the divorce settlement and the dissolution court's decision. The district court did not specifically refer to that issue in its ruling. Rileys argue that under Federal Rule of Civil Procedure 52(a) specific findings of fact and conclusions of law are not required, and in any event, the record is clear that the court considered all of Bittners' assertions. Rileys point out that Bittners made no motion to expand or correct the findings of the district court pursuant to Federal Rule of Civil Procedure 52(b).
 
 
 29
 We need not consider whether it was error to fail to address the continued prosecution issue because we hold that the Bittners, by failing to raise this proposition in the trial court, deprived the trial judge of an opportunity to address the alleged error and make further findings. Therefore, the alleged error may not be raised on appeal.
 
 
 30
 Rule 52(a) states that requests for findings are not necessary for purposes of review. Rule 52(b) provides that the question of the sufficiency of the evidence to support the findings may be raised whether or not the party raising the question has made an objection in the district court to the findings or has made a motion to amend them or a motion for judgment.
 
 
 31
 Although the courts have given these two provisions full effect when they are applicable, they have not extended their application. The courts have held that the general principle of Rule 46 is still controlling and that, except as specifically otherwise provided in Rule 52, it is necessary that a party make known to the trial court his objection to the action taken by it and the grounds of the objection. And appellate courts have refused to consider objections to the form of the findings if those objections were not made below.
 
 
 32
 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2581 (1971).
 
 
 33
 The purpose [of Rule 46] is to inform the trial judge of possible errors so that he may have an opportunity to reconsider his ruling and make any changes deemed advisable. It is therefore the general rule that points not raised below will not be considered on appeal. Though an appellate court, in a proper case, has power, on its own motion, to consider errors to which no objections were made, such powers should be exercised only in exceptional cases and in the interest of justice. This is not such an exceptional case.
 
 
 34
 Fortworth & Denver Ry. v. Harris, 230 F.2d 680, 682 (5th Cir.1956) (citations omitted)[1]; See also Sanders v. Clemco Indus., 823 F.2d 214, 217-18 (8th Cir.1987).
 
 
 35
 Nor is the case at bar the exceptional case requiring this court to depart from the general rule. Had Bittners asked for additional findings of fact on Rileys' conduct after Bittners' motion to dismiss was filed, Judge Wolle could easily have amended his ruling and order to address that issue. The evidence was before him. Judge Wolle was aware of Bittners' position and questioned Rileys about their conduct.
 
 
 36
 Finally, Bittners argue the district court improperly considered certain facts in reaching its decision. Those facts include Bittners' failure to inform Rileys that the lawsuit was frivolous, and the "venomous" nature of Bittners' motion for sanctions, a description which counsel admits is accurate. It is not apparent from the record that these facts influenced the court in any manner.
 
 
 37
 The most troublesome aspect of this lawsuit is the lack of professionalism and civility displayed by the lawyers. Judge Vietor and Judge Wolle both commented on the antagonistic attitudes between Rileys and the Bittners. In spite of the admonitions of the district court judges, the same attitudes were present in the briefs and oral argument on appeal. This case serves as an example of the unfortunate lack of civility in the practice of law which is receiving considerable attention at this time. Better investigation of the facts by the Rileys, or a courtesy telephone call from the Bitters might have avoided the time and money expended in this suit. A court would be more likely to impose a sanction if a courtesy phone call had been made to counsel who ignored the call. The adversary process in the judicial arena does not require attorneys to be clothed in a suit of armor and fight to the bitter end. The parties, the profession, and the public all lose when the attorneys fail to treat each other with common courtesy.
 
 
 38
 For the reasons stated the district court is affirmed.
 
 
 
 *
 The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 The following cases support the foregoing analysis. Porterco, Inc. v. Igloo Prods. Corp., 955 F.2d 1164, 1173 (8th Cir.1992); Jones v. Collier, 762 F.2d 71, 72 (8th Cir.1985); Brookhaven Landscape v. J.F. Barton Contracting, 676 F.2d 516, 523 (11th Cir.1982); Stone v. Morris, 546 F.2d 730, 736 (7th Cir.1976); Evans v. Suntreat Growers & Shippers, Inc., 531 F.2d 568, 570 (Temp.Emer.Ct.App.1976); George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547, 558 n. 17 (1st Cir.1974) cert. denied, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); Colonial Refrigerated Transp. Inc. v. Mitchell, 403 F.2d 541, 552 (5th Cir.1968); McMahon v. Carribean Mills, 332 F.2d 641, 642 (10th Cir.1964); Fleming v. Van Der Loo, 160 F.2d 905, 909-10 (D.C.Cir.1947); Massachusetts Bonding & Ins. Co. v. Preferred Automobile Ins. Co., 110 F.2d 764, 765 (6th Cir.1940)