BLACK HILLS INSTITUTE OF GEO-
LOGICAL RESEARCH; Black Hills
Museum of Natural History Foundation,
Inc., a non-profit corporation, Plaintiffs,

Joseph M. Butler, Appellant,

v.

SOUTH DAKOTA SCHOOL OF MINES
AND TECHNOLOGY, Appellee,

United States Department
of Justice, Defendant.

BLACK HILLS INSTITUTE OF GEO-
LOGICAL RESEARCH; Black Hills
Museum of Natural History Foundation,
Inc., a non-profit corporation, Appel-
lants,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Appellee.

Nos. 93–1600, 93–1602.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1993.

Decided Dec. 15, 1993.

Order Denying Rehearing and Suggestion
for Rehearing En Banc Feb. 2, 1994.

738

Joseph Butler, Rapid City, SD, argued (Mark F. Marshall on the brief), for appellant Butler in No. 93–1600.

Patrick Duffy, Rapid City, SD, argued (Mark F. Marshall, on the brief), for appellant Black Hills Institute in No. 93–1602.

Gene N. LeBrun, Rapid City, SD, argued (Edward J. Shawaker and David C. Shilton of Washington, DC, on the brief), for School of Mines in No. 93–1600.

Edward Shawaker, Washington, DC, argued (Ted L. McBride, Robert A. Mandel, Myles E. Flint, and David C. Shilton, on the brief), for appellee U.S. in No. 93–1602.

Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

Black Hills Institute of Geological Research and Black Hills Museum of Natural History Foundation (collectively, "Black Hills") appeal the district court's[1] judgment in favor of the United States. The district court found that the United States holds title to a valuable Tyrannosaurus rex skeleton ("the fossil" or "Sue") in trust for Maurice Williams ("Williams"), an individual Indian who is the beneficial owner of trust land on which Black Hills discovered the fossil. Joseph M. Butler appeals separately from the district court's order imposing Rule 11 sanctions on Butler for naming an improper party as a defendant. We affirm the district court's judgment that the United States holds trust title to the fossil and reverse its Rule 11 order.

## I. BACKGROUND

This case is before us for the third time. The factual background is uncomplicated. Black Hills collects and restores fossils for display in museums. In August 1990, Black Hills was excavating fossils in western South Dakota. Sue Hendrickson, a researcher working on the project, discovered Sue on Williams' ranch while on break. Since 1969, the United States has held this ranch land in trust for the sole use and benefit of Williams, an Indian. Two days after the discovery, Black Hills scientists began excavating Sue, the most complete and valuable Tyrannosaurus rex skeleton known to man, from Williams' land. At some point during the excavation, Black Hills purported to purchase from Williams the right to excavate Sue for $5000. After excavation, Black Hills moved the ten tons of bones to Hill City, South Dakota, where scientists began the laborious process of restoring the fossil.

In May 1992, however, federal officers seized Sue and moved her to the South Dakota School of Mines and Technology ("School of Mines"). The United States attorney for South Dakota ordered the seizure on the ground that Black Hills' removal of Sue from Williams' land violated federal criminal statutes relating to federal lands. Black Hills then brought suit in district court to quiet title to Sue. In conjunction with this action, it sought a preliminary injunction for possession of the fossil pending the outcome

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

of the suit. After the district court denied Black Hills a preliminary injunction, Black Hills moved under Eighth Circuit Rule 8A to this court for an order granting it custody of Sue pending appeal of the injunction denial.

In *Black Hills Institute of Geological Research v. United States Department of Justice,* 967 F.2d 1237, 1241 (8th Cir.1992) (*Black Hills I* ), we found that the district court had anomalous jurisdiction over the temporary custody issue and remanded for a determination of the proper temporary custodian. The district court concluded that Sue should remain at the School of Mines pending disposition of the case on the merits. In *Black Hills Institute of Geological Research v. United States Department of Justice,* 978 F.2d 1043, 1045 (8th Cir.1992) (*Black Hills II* ), we affirmed the district court's custody order, dismissed with prejudice Black Hills' appeal of the preliminary injunction denial, and remanded the case for proceedings on the merits. Meanwhile, Black Hills amended its complaint by abandoning the quiet title theory of its case and instead seeking only an order requiring the United States to return Sue to it.

On remand, the district court found that it still had to determine ownership of Sue despite Black Hills' amended complaint because "[a] permanent possessory right to the fossil is subsumed within the context of ownership." 812 F.Supp. 1015, 1018 (Feb. 3, 1993). It then concluded that it had federal question jurisdiction under 28 U.S.C. § 1331 because the case involved the application of federal statutes relating to Indian trust lands. Reaching the merits, the district court found that Sue was an interest in land under the trust land statutes. Because Williams failed to receive the Secretary of the Interior's ("the Secretary") approval for his attempted sale of Sue to Black Hills, the court reasoned, the transaction was void and the United States retained title to Sue in trust for Williams. Black Hills now appeals.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

■■■■ The first issue we must address is the district court's basis for subject matter jurisdiction over this case. We find that the district court had general federal question jurisdiction under 28 U.S.C. § 1331. Black Hills' complaint alleged facts sufficient to bring the case within 5 U.S.C. § 702's broad waiver of sovereign immunity. Section 702 waives the federal government's sovereign immunity in cases challenging agency action—here, the Department of Justice's seizure of Sue—and seeking relief other than money damages.[2] *See* 5 U.S.C. § 702; *Specter v. Garrett,* 995 F.2d 404, 410 (3d Cir.) (holding that § 702's waiver of sovereign immunity is not limited to cases brought under the Administrative Procedure Act), *cert. granted,* —— U.S. ——, 114 S.Ct. 342, 126 L.Ed.2d 307 (1993); *Presbyterian Church v. United States,* 870 F.2d 518, 525 (9th Cir. 1989) (holding that the term "agency action" "was clearly intended to cover the full spectrum of agency conduct"). District courts have jurisdiction under § 1331 to hear cases falling within § 702's consent to suit. *See Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977) (holding that § 1331 confers jurisdiction on federal courts to review agency action "subject only to preclusion-of-review statutes created or retained by Congress").

### B. Ownership of the Fossil

■■■■ We now reach the merits of the case. We must first decide precisely what issue is before us. Initially, Black Hills sued the government to quiet title to Sue. Black Hills' second amended complaint abandoned the quiet title action and sought an order requiring the government to return the fossil. Black Hills argues that the district court erred because it determined ownership, an issue Black Hills claims that it did not raise in the second amended complaint. According to Black Hills, the district court "only

---

2. Section 702 provides that its waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Under 28 U.S.C. § 2409a(a), Congress waived the government's sovereign immunity in suits seeking to quiet title to real property. Section 2409a(a), however, "does not apply to trust or restricted Indian lands." *Id.* Thus, § 2409a retains sovereign immunity for suits seeking to quiet title to Indian trust lands. Section 2409a(a) does not "expressly or impliedly forbid[ ] the relief which is sought" here because Black Hills seeks the return of what is now personal property, not a determination of title to Indian trust land.

had jurisdiction to determine whether [Black Hills] or the Department of Justice was entitled to possession of the fossil." Appellant's Br. at 41.

In the second amended complaint, however, Black Hills stated that it "paid Williams $5000 in exchange for Sue. [Black Hills] scientists wrote a check to Williams on August 27, 1990, which he accepted and cashed in full payment for Sue." 2d Amended Compl., ¶ II, at 1. Thus, Black Hills alleged that it owned the fossil outright, not that it leased it or had some possessory interest that did not amount to full ownership. In light of this allegation, we can only construe its request that the district court order the "United States to return the fossil to [Black Hills]" as a claim for permanent possession of Sue. Id. at 5. Determining whether Black Hills is entitled to permanent possession necessarily requires determining which party actually owns the fossil. Thus, we must determine whether the transaction between Williams and Black Hills transferred title of Sue to Black Hills.

The ownership issue depends on our construction of several statutes governing Indian trust land. Sue Hendrickson discovered the fossil on land to which the United States holds legal title in trust for Williams, an individual Indian. Under the trust instrument, the United States will hold the land "in trust for the sole use and benefit of" Williams until the trust relationship expires on September 23, 1994. The United States acquired the land pursuant to the Indian Reorganization Act of 1934 ("the IRA"), see 25 U.S.C. § 465, and issued the trust patent to Williams pursuant to a provision of the General Allotment Act of 1887 ("the GAA"), see 25 U.S.C. § 348.[3] Until the trust expires in 1994, Williams is a beneficial owner of the land, retaining certain judicially-recognized rights but lacking the absolute right to dispose of the land as he pleases.

Other provisions of the IRA reflect the limits of Williams' interest in his trust land. Section four of the IRA, subject to several exceptions not relevant here, prohibits the "sale, devise, gift, exchange, or other transfer of restricted" Indian trust lands. Id. § 464 (codifying § 4 of the IRA). On application of Indian owners, however, the Secretary has discretion "to remove restrictions against alienation, and to approve conveyances, with respect to lands or interests in lands held by individual Indians under [the IRA]." Id. § 483; see also 25 C.F.R. § 152.22 (1993) (providing that "[t]rust or restricted lands . . ., or any interest therein, may not be conveyed without the approval of the Secretary"); id. § 152.23 (describing the application and approval process). These statutes and regulations establish a scheme by which beneficial owners of Indian land such as Williams may alienate all or part of their interest before their trust instruments expire. Outside of the permitted transactions not applicable here, the only way such owners may alienate an interest in their trust land is by securing the prior approval of the Secretary. An attempted sale of an interest in Indian trust land in violation of this requirement is void and does not transfer title. See Mottaz v. United States, 753 F.2d 71, 74 (8th Cir.1985), reversed on other grounds, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986).

Here, Black Hills claims that it purchased the right to excavate Sue from Williams for $5000. Williams did not apply to the Secretary for prior approval of this transaction nor did the Secretary ever approve it. All parties agree that the fossil is now personal property because it has been severed from the land. In Starr v. Campbell, 208 U.S. 527, 534, 28 S.Ct. 365, 367, 52 L.Ed. 602 (1908), however, the Supreme Court held that timber from Indian trust land that the beneficial owner sold was subject to the trust patent's restraint on alienation even though the timber became personal property after the purchaser severed it from the land.[4]

**3.** The IRA ended the federal government's policy of allotting tribal land in severalty to individual Indians. See 25 U.S.C. § 461. Under 25 U.S.C. § 335, however, provisions of the GAA continue to apply "to all lands heretofore purchased or which may be purchased by authority of Congress for the use or benefit of any individual Indian or band or tribe of Indians," "[u]nless otherwise specifically provided." The relevant

GAA provision that applies here is 25 U.S.C. § 348, which governs the trust relationship between the government and the individual Indian.

**4.** The Supreme Court has held that a beneficial owner of Indian trust land could sell timber from his land without violating the restraint on alienation because "the cutting [wa]s incidental to the

■ Thus, the relevant inquiry for purposes of assessing the validity of the transaction is whether the fossil was personal property or land before Black Hills excavated it. If it was land within the meaning of the relevant statutes and regulations, the transaction between Williams and Black Hills is void and the United States holds Sue in trust for Williams because the trust continued in Sue when she became personalty. *Cf. United States v. Brown,* 8 F.2d 564, 566 (8th Cir.1925) (explaining in the context of Indian trust land that "no change of form of property divests it of a trust[;] [a] substitute takes the nature of the original and stands charged with the same trust"), *cert. denied,* 270 U.S. 644, 46 S.Ct. 210, 70 L.Ed. 777 (1926).

■ Whether the fossil was "land" within the meaning of both 25 U.S.C. § 464 and 25 U.S.C. § 483 is a matter of federal law. Because Congress has provided no definition of "land" applicable to these statutes, however, we may refer to state property law for guidance. *See United States v. Certain Real Property at 2525 Leroy Lane,* 910 F.2d 343, 349 (6th Cir.1990) (discussing federal forfeiture statutes), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); *see also Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 676, 99 S.Ct. 2529, 2542, 61 L.Ed.2d 153 (1979) (finding that state property law controlled title dispute between Indian and non-Indian claimants to land even though issue was ultimately one of federal law). South Dakota law denominates two classes of property: "[r]eal or immovable" property and "[p]ersonal or movable" property. S.D. Codified Laws Ann. § 43–1–2. "Real or immovable property consists of: (1) Land; (2) That which is affixed to land; (3) That which is incidental or appurtenant to land; (4) That which is immovable by law. Every kind of property that is not real is personal." *Id.* § 43–1–3. "Land," in turn, "is the solid ma-

terial of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance." *Id.* § 43–1–4.

We hold that the fossil was "land" within the meaning of § 464 and § 483. Sue Hendrickson found the fossil embedded in the land. Under South Dakota law, the fossil was an "ingredient" comprising part of the "solid material of the earth." It was a component part of Williams' land, just like the soil, the rocks, and whatever other naturally-occurring materials make up the earth of the ranch. Black Hills makes several arguments to the contrary, none of which we find persuasive. That the fossil once was a dinosaur which walked on the surface of the earth and that part of the fossil was protruding from the ground when Hendrickson discovered it are irrelevant. The salient point is that the fossil had for millions of years been an "ingredient" of the earth that the United States holds in trust for Williams. The case very well might be different had someone found the fossil elsewhere and buried it in Williams' land or somehow inadvertently left it there. Here, however, a Tyrannosaurus rex died some 65 million years ago on what is now Indian trust land and its fossilized remains gradually became incorporated into that land. Although it is movable, personal property now, at the time Hendrickson discovered the fossil it was part of Williams' land and thus is subject to § 464 and § 483. As in *Starr,* 208 U.S. at 534, 28 S.Ct. at 367, where an Indian sold timber constituting 15/16 of the value of the land, we would render the statutory restraint on alienation here essentially meaningless if Williams could transfer the right to excavate a priceless fossil derived from otherwise nondescript land without the Secretary's permission. Because he did not seek the Secretary's approval, we hold that Williams' attempted sale to Black Hills is void [5] and that the United States holds Sue

preparation of [the] land for agricultural uses." Felix S. Cohen, *Handbook of Federal Indian Law,* at 539 n. 94 (1982 ed.) (citing *United States v. Paine Lumber,* 206 U.S. 467, 473–74, 27 S.Ct. 697, 699–700, 51 L.Ed. 1139 (1907)). The Court distinguished *Paine,* however, in *Starr.* In *Starr,* the Court found the timber subject to the restraint on alienation because the timber constituted 15/16 of the value of the land and the land was "timber land" unsuitable for farming. 208 U.S. at 534, 28 S.Ct. at 367. Holding otherwise, the Court reasoned, would reduce the restraint

on alienation to "small consequence." *Id.* Thus, *Paine* does not apply here because Sue was a valuable part of the land and nothing in the record suggests that she was excavated to clear the land for farming or other similar purposes.

5. There is an ongoing dispute between Williams and Black Hills regarding this transaction. We intimate no opinion as to the remedies Black Hills may have under state law as to its $5000 payment to Williams. Moreover, because Black Hills does not argue that it acquired anything

in trust for Williams pursuant to the trust patent.

█ Black Hills argues, however, that the trust relationship between Williams and the United States does not govern the fossil. It claims that the government's trust duties over Williams' land are limited to safeguarding the land base of the reservation through restricting alienation of the land and preserving the land's tax-exempt status. The government's seizure of the fossil, it asserts, exceeded the scope of the trust because no statutes regulate the management of fossils on Indian trust land and personal property such as the fossil is unrelated to the land base. Black Hills cites *United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*Mitchell I*), and *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*), for support.

In *Mitchell I,* individual Indians sued the United States for mismanaging timber resources on trust land of which they were the beneficial owners. The Supreme Court found that the GAA, the statute under which the Indians had received their beneficial interests in the land, did not "impose any duty upon the Government to manage timber resources." 445 U.S. at 542, 100 S.Ct. at 1353. Rather, the GAA created only a "limited trust relationship" that sought "to prevent alienation of the land and to ensure that allottees would be immune from state taxation." *Id.* at 542, 544, 100 S.Ct. at 1353, 1354. In *Mitchell II,* however, the Court found that, even though the GAA was not a basis for liability, the United States could be liable for damages for mismanaging the timber because an elaborate statutory and regulatory scheme imposed fiduciary duties on the government relating to the management of timber resources on Indian trust land. 463 U.S. at 226, 103 S.Ct. at 2972. *Mitchell I* and *Mitchell II,* Black Hills claims, together compel the conclusion that the trust relationship between the government and Williams

does not encompass the attempted sale of Sue because the absence of a statutory scheme governing fossils means that the government has only limited trust duties where fossils are involved. The limited duty of preventing alienation of the land, it argues, does not include preventing sales of fossils.

We reject the Black Hills' argument that the *Mitchell* cases suggest that the government exceeded the scope of its trust relationship with Williams. First, the fiduciary duties of the government to beneficial owners of trust land, the issue that the *Mitchell* cases addressed, and the ability of beneficial owners to alienate trust land, the issue here, are different questions. Thus, that there are no statutes or regulations specifically governing the sale of fossils is not important. The absence of such regulation only suggests that the government could not be liable in damages to Williams for breaching alleged fiduciary duties relating to the management of fossils on his land. It does not, however, affect the validity of Williams' attempted sale of the fossil to a third party because there *are* statutes and regulations governing the alienation of interests in Indian trust land, such as fossils. Moreover, the Court's holding in *Mitchell I* that the GAA imposed only limited trust duties on the government does not help Black Hills. Indeed, Congress enacted the GAA to prevent alienation of Indian trust land. 445 U.S. at 542, 100 S.Ct. at 1353. Because the fossil was part of Williams' trust land and he failed to secure approval for his attempted sale of the right to excavate it, we hold that the United States' seizure of the fossil was a proper exercise of its trust status under the GAA.[6] Finally, nothing in either *Mitchell* case suggests that Congress intended that the goal of preventing alienation of the land not apply to interests in such land, like fossils, that become personal property when severed from the land.

█ Black Hills next argues in effect that holding Williams' sale invalid is bad policy. It asserts that Williams was competent to

less than title to Sue, we need not decide whether Williams could have leased Sue or transferred other rights to Black Hills.

6. The government seized the fossil pursuant to a search warrant as part of a criminal investigation. Black Hills argues that the government

cited violations of the Antiquities Act as one basis for the seizure knowing that the Act did not apply. We need not evaluate the government's articulated rationale for the seizure, however, because we conclude that the seizure was within the scope of the trust relationship with Williams.

sell the fossil even if it was an interest in land and that finding the sale invalid would undermine the current legislative trend favoring tribal self-determination. These points are matters of policy for Congress to consider, not federal courts. The current statutory scheme reflects Congress's desire to protect beneficial owners of Indian trust land like Williams regarding disposition of interests in such land. *See* 25 U.S.C. §§ 348, 464, 483; *see also Tooahnippah v. Hickel,* 397 U.S. 598, 609, 90 S.Ct. 1316, 1323, 25 L.Ed.2d 600 (1970) (explaining that the GAA's legislative history "reflects the concern of the Government to protect Indians from improvident acts or exploitation by others"). Congress may very well determine that the historic practice of shielding beneficial owners from their own improvident decisions, unscrupulous offerors, and whatever other evils the enacting Congresses contemplated decades ago is no longer wise.[7] Until it does, however, we are bound to apply the statutes and regulations forbidding such owners from alienating trust land without the Secretary's approval.

■■■ Black Hills and *amici curiae* the Libertarian Party of South Dakota and the National Libertarian Party make several other brief arguments. First, we reject *amici's* suggestion that we remand the case to the Secretary to consider *nunc pro tunc* approval of the sale. The statute provides that "application of the Indian owners" is a prerequisite to the Secretary's approval of conveyances of trust land. 25 U.S.C. § 483. The Secretary may not consider the transaction at issue here because Williams has never submitted an application. Moreover, we reject Black Hills' argument that the United States lacks standing to claim trust ownership of Sue because neither the Secretary nor Williams are parties. Williams is not a

necessary party, *see Heckman v. United States,* 224 U.S. 413, 444, 32 S.Ct. 424, 434, 56 L.Ed. 820 (1912), and the United States may claim trust title without the Secretary because the trust patent names it as trustee.

■■■ We also reject Black Hills' claim that the district court's decision violated its due process rights because the government seized the fossil without a pre-deprivation hearing and because Black Hills added value to Sue that it will be unable to recoup. Because we find that Black Hills has no interest in Sue, we reject its claim that the lack of a pre-deprivation hearing violated its rights. Moreover, although it is unfortunate that Black Hills spent a great deal of time and resources adding value to a fossil it does not own, concluding that Black Hills' transaction with Williams is void does not deprive Black Hills of due process where it had no interest in the fossil and it could have taken any number of steps to protect itself in the first place. At the very least, for instance, that the fossil was embedded in land located within the boundaries of the Cheyenne River Sioux Indian Reservation should have alerted Black Hills to the possibility that the federal government had some interest in Sue. Because it did not, however, we hold that the United States holds Sue in trust for Williams pursuant to the trust patent.

## C. Rule 11 Sanctions

■■■ Counsel for Black Hills, Joseph Butler, challenges the district court's order imposing sanctions under Fed.R.Civ.P. 11[8] on him for naming the School of Mines as a defendant in the first amended complaint. The court awarded the School of Mines attorney's fees because it found that the school was not a proper defendant to Black Hills' quiet title action,[9] reasoning that the school had "no conceivable basis to assert any rights

---

7. Congress has already eliminated many of the protections earlier statutes provided for Indians. Section 483 itself, for instance, allows Indians to apply to the Secretary for removal of alienation restrictions. Thus, the statutes reflect the trend toward Indian self-determination. Although it has diminished the practice of protecting Indians, however, Congress has not completely eliminated it. Williams was free to request that the government end the trust or that he be allowed to alienate his land, but he did not. Because he did not, the vestiges of protection that remain still apply.

8. The amendments to Rule 11 that went into effect on December 1, 1993, do not affect our analysis.

9. As we noted above, Black Hills' second amended complaint sought the return of Sue and abandoned the quiet title claim. At issue here is the district court's decision to sanction Butler for naming the School of Mines a defendant in the case when Black Hills was asking the court to quiet title.

to the fossil" and "was nothing more than a mere depository of the fossil." D.Ct.Mem. Op. and Order at 3–4 (Sept. 8, 1992). ·

■■■■ We review the district court's imposition of sanctions under Rule 11 for an abuse of discretion. *Miller v. Bittner,* 985 F.2d 935, 938 (8th Cir.1993). The district court's task is to ascertain whether the attorney met the objective reasonableness standard. *Id.* (citations omitted). Improperly naming a party in a suit justifies Rule 11 sanctions when "joining the party [is] baseless or lacking in plausibility." *Community Elec. Serv. of Los Angeles v. National Elec. Contractors Assoc.,* 869 F.2d 1235, 1245 (9th Cir.) (citing *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir.1987)), *cert. denied,* 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989).

We find that Butler's decision to name the School of Mines as a defendant here was not baseless or lacking in plausibility. Initially, Black Hills framed its case as a quiet title action. At the time Black Hills named it a defendant in the first amended complaint, the School of Mines was in possession of Sue. The district court, citing 74 C.J.S. *Quieting Title* § 54, found that the School of Mines had no "material subsisting interest" in Sue because it possessed her merely as an agent for the government and thus was not a proper party. D.Ct.Mem.Op. and Order at 3. The court's analysis of the merits of the School of Mines' status as a proper party would have been the correct inquiry on a motion to dismiss. It was not, however, the correct inquiry on a motion for Rule 11 sanctions.

Rather, as *Community Electric Service* suggests, the focus in the Rule 11 context should be on the plausibility of including the School of Mines as a party at the complaint stage. We think that the School of Mines' possession of Sue, albeit as a "depository" for the government, gave Black Hills a plausible argument that the School of Mines had a sufficient interest in the property to be named as a defendant in a quiet title action. Indeed, the district court itself noted that "in some circumstances possession of the object in dispute may be enough to justify suing the possessor in a quiet title action." *Id.* Case law on this issue is sparse and we will not force Butler to bear the burden of Rule 11 sanctions where it is unclear precisely in what "circumstances" possession is enough to sue the possessor. *Cf. Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir.1990) (reversing award of Rule 11 sanctions where plaintiff's claim, although ultimately unsuccessful, involved "the complexities of New York long arm jurisprudence"), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). Butler had a plausible claim that the School of Mines' possession gave it the "material subsisting interest" in Sue needed to render it a proper party in the case.

■■■■ Moreover, regardless of whether the School of Mines asserted an ownership interest in Sue, the fact remains that it retained possession of her. There is ample authority for the proposition that the court in a quiet title action, in order to afford complete relief, may order that a defendant relinquish possession of the subject property to the plaintiff. *See* 74 C.J.S. *Quieting Title* §§ 96, 108 (1951). Thus, naming the School of Mines as a defendant here was not baseless because the school clearly had an interest in Sue—possession—that a quiet title action could affect; failure to include the School of Mines might have required Black Hills to bring an entirely different action to enforce its right to possession if the court found that it had such a right. Once the School of Mines represented in open court that it would abide by any order the district court made and would not assert any separate interest in Sue, counsel for Black Hills immediately assented to dismissal of the school from the case. *See* Status Conference Tr. at 16. Thus, we hold that the district court abused its discretion in imposing Rule 11 sanctions on Butler. Although naming the School of Mines as a defendant in the first amended complaint ultimately proved to be unnecessary, Butler acted reasonably under the existing facts and law.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court that the United States holds Sue in trust for Williams pursuant to the trust patent, and we reverse the district court's order imposing Rule 11 sanctions on Joseph Butler.

ORDER DENYING PETITION FOR
REHEARING AND SUGGESTION
FOR REHEARING EN BANC

Feb. 2, 1994.

(No. 93–1602)

The suggestion for rehearing en banc is denied.

The petition for rehearing by the panel is also denied with the following explanation. In its petition for rehearing, Black Hills Institute of Geological Research (Black Hills) relies on *United States v. Good,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), for the claim that it was entitled to an adversary hearing before the Department of Justice seized the fossil "Sue" from it. In *Good,* it was undisputed that Good owned the real property that the government had seized without first providing Good with an adversary hearing. *See id.* at ——–——, 114 S.Ct. at 496. This fact distinguishes *Good* from the instant case, where the panel determined that Black Hills did not own the property in question. *See Black Hills Inst. of Geological Research v. United States Dep't of Justice,* 12 F.3d 737, 742–43 (8th Cir.1993).